MARY M. STUMPF, executrix, *vs.* GEORGE A. LELAND.

Suffolk.    March 10, 1922. — June 29, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, & CARROLL, JJ.

*Landlord and Tenant,* Landlord's liability in tort.    *Negligence,* Of one controlling real estate.

At the trial of an action by a tenant against his landlord for personal injuries caused by the breaking of a defective railing upon a piazza of the premises let, there was no evidence that the defendant knew anything about the condition of the premises. It appeared that an agent of his had no knowledge of the defective condition of the railing except that gained by looking at it from inside the house, when "it did not appear to be all right; that it looked seedy and worn; that he did not examine the balusters; that the whole thing appeared to be weather beaten, the rail and the balusters included; that he made no close inspection of the top railing." *Held,* that a finding was not warranted that either the defendant or his agent had any information relating to a hidden defect in the railing.

In the absence of an express warranty or of deceit by the landlord, a tenant takes premises as he finds them and assumes the risk of their quality.

In the absence of an express contract between a landlord and the tenant of real estate relating to repairs to be made by the landlord, or of fraud or misrepresentation on the part of the landlord, a tenant cannot recover of his landlord for injuries resulting from a hidden defect in the demised premises unless the landlord actually knew of the facts constituting the defect and failed to disclose the defect to the tenant: there is no duty resting on the landlord to make search, for the benefit of the tenant, for hidden defects.

TORT for personal injuries received by Alice E. Beatty on April 1, 1919, and caused by the breaking of a railing on a back piazza of

premises at 1493 Beacon Street in Brookline, owned by the defendant and occupied by her and her sister. Writ dated May 31, 1919.

The action was brought by Alice E. Beatty. After the trial in the Superior Court, the original plaintiff died and the executrix of her will was substituted as plaintiff.

In the Superior Court, the action was tried before *Aiken*, C.J. Material evidence is described in the opinion. At the close of the evidence, the defendant presented and the Chief Justice denied a motion that a verdict be ordered for the defendant.

Among other requests by the defendant for rulings were the following, which were refused:

"16. That if the actual defective condition of the railing could have been discovered by the plaintiff by the exercise of reasonable diligence, such condition did not constitute a hidden defect regarding which the defendant was bound to notify the plaintiff."

"24. That if the railing on said back porch was defective, and the defect was of such nature that it could have been as readily ascertained by the plaintiff as by the defendant, and if the defendant had no knowledge of the defective condition, the plaintiff cannot recover."

The defendant also asked for the following rulings:

"25. That the plaintiff took said premises including the back porch in the condition they were or appeared to be in at the time she entered into possession, unless the defects in said railing were hidden, were in the nature of a trap, were known to the defendant and were unknown to the plaintiff."

"27. That upon all the evidence in the case the railing which broke did not constitute such a hidden defect or trap of which the defendant should have known and concerning which it was incumbent upon the defendant to notify the plaintiff."

The Chief Justice instructed the jury that the condition of the railing was not what in law would be designated as a trap, but refused to give the remainder of each of the foregoing twenty-fifth and the twenty-seventh requests.

The defendant also saved an exception to the following portion of the charge to the jury:

"Now I come to the duty of the landlord. He does not warrant or guarantee the safety of the premises, but if there was a condition of this railing that was, in fact, unsafe and he was

aware of it, or ought to have been aware of it, it was his duty to tell her."

There was a verdict for the plaintiff in the sum of $9,750; and the defendant alleged exceptions.

*F. Ranney,* (*T. Allen, Jr.,* with him,) for the defendant.

*F. J. Carney,* for the plaintiff.

RUGG, C.J. This is an action of tort to recover compensation for personal injuries received by Alice E. Beatty by reason of a defect in the railing of a back porch on premises owned by the defendant and occupied by the deceased and her sister. The case was submitted to the jury under instructions that the relation of landlord and tenant existed between the defendant and Mrs. Beatty. A written lease between the latter and her sister as lessees and the defendant as lessor had been executed under date of March 10, 1919, for a term of years beginning with May 1, 1919, but the lessees entered into occupancy on March 27, 1919, knowing that certain repairs called for in the lease, including a "new floor and railing in back porch," had not been made and were thereafter to be made. Before they were made the plaintiff was injured by reason of the giving way of the railing, which might have been found to have been defective. The deceased and her sister as prospective tenants availed themselves of opportunity for inspection of the premises before the tenancy began. There was no contract between the parties concerning the condition of the premises other than that implied by law. There was no fraud or misrepresentation about them. There was no evidence that the defendant knew anything about the condition of the premises. His liability rests upon the knowledge of his agent in charge and he is bound by the knowledge of that agent. There was no evidence that the agent had any knowledge of the defective condition of the railing except that gained by looking at it from inside the house, when "it did not appear to be all right; that it looked seedy and worn; that he did not examine the balusters; that the whole thing appeared to be weather beaten, the rail and the balusters included; that he made no close inspection of the top railing." This fails to show on the part of the agent information concerning a hidden defect. All of this was equally open to the inspection and observation of the tenants.

At the close of the evidence the defendant moved that a verdict

be directed in his favor and excepted to its denial.   The defendant also excepted to an instruction respecting the duty of the defendant as landlord, to the effect that if there was a condition in the railing which "was in fact unsafe, and he was aware of it, or ought to have been aware of it, using the care and prudence that a landlord should and Mrs. Beatty was unaware of it, it was his duty to tell her." There was error in both these rulings.   The trial appears to have proceeded upon a misconception as to the governing principles of the law of landlord and tenant respecting facts such as are here disclosed.

The tenant takes the premises as he finds them and assumes the risk of their quality in the absence of an express warranty or deceit.   There is no presumption that they are in good repair or fit for occupancy.   There is no duty implied from the relation of landlord and tenant that the former will keep the premises in a safe condition during occupancy by the latter, or in the same condition in which they were or appeared to be at the beginning of the tenancy.   In general the tenant cannot recover against his landlord for personal injuries caused by the defective condition of the premises let unless the landlord agrees to repair, makes the repairs and is negligent in making them.   *Conahan* v. *Fisher*, 233 Mass. 234, 238, 239, and cases there collected.   *Wallquist* v. *Rogers*, 237 Mass. 83.   One qualification of this general rule is that if the landlord knows of some hidden defect in the demised premises, of which the tenant is ignorant, then the obligation rests on the landlord to give notice thereof to the tenant, and, for injuries arising from such failure of duty, the landlord may be held liable in damages.   This obligation does not exist in the absence of knowledge on the part of the landlord.   It does not impose a duty of inspection in order to find defects and consequent liability for negligent performance of such inspection. This is manifest from a review of our decisions, wherein the pertinent principles of law with their underlying reasons have been stated and applied.

In *Bowe* v. *Hunking*, 135 Mass. 380, a tenant sued her landlord to recover damages caused by the giving way of the tread of a stair due to having "been sawed, about four inches from each end, across to within about an inch of the back side of it, and lengthwise cut out about an inch from and parallel to the back side of

the tread." The landlord knew that "the step had been sawed out, and this an examination by the tenant must have disclosed." It there was said, "There is no warranty implied in the letting of an unfurnished house or tenement that it is reasonably fit for use. . . . In the case at bar, there was no express or implied warranty, and no actual fraud or misrepresentation. If the action can be maintained, it must be on the ground that it was the duty of the defendants to inform the tenant of the defect in the staircase; this duty, if it exists, does not arise from the contract between the parties, but from the relation between them, and is imposed by law. If such a duty is imposed by law, it would seem that there is no distinction, as a ground of liability, between an intentional and an unintentional neglect to perform it; but in such a case as this is, there can be no such duty without knowledge of the defect. . . . A tenant is a purchaser of an estate in the land or building hired; and *Keates* v. *Cadogan,* 10 C. B. 591, states the general rule, that no action lies by a tenant against a landlord on account of the condition of the premises hired, in the absence of an express warranty or of active deceit. . . . This rule does not apply to cases of fraud. It does not apply to the sale or delivery of dangerous or noxious articles."

In *Cowen* v. *Sunderland,* 145 Mass. 363, the "general rule" was stated to be "well established by the decisions of this court, that the lessee takes an estate in the premises hired, and takes the risk of the quality of the premises, in the absence of an express or implied warranty by the lessor, or of deceit. . . . When there are concealed defects, attended with danger to an occupant, and which a careful examination would not discover, known to the lessor, the latter is bound to reveal them. . . . While the failure to reveal such facts may not be actual fraud or misrepresentation, it is such negligence as may lay the foundation of an action against the lessor, if injury occurs." In *Stevens* v. *Pierce,* 151 Mass. 207, it was said at page 209, "It is well settled that there is no implied covenant in a lease of this kind that the premises are fit for habitation. The doctrine of *caveat emptor* applies, and the rule is the same in reference to a lease of a dwelling-house as to a conveyance of real estate of any other kind. . . . If a wrong was done the plaintiff such as he alleges, his only remedy was in tort, for fraud and deceit in inducing him to take the lease, or for

negligence in failing to inform him, if by reason of a concealed defect which could not readily be discovered, and which was known to the defendant and unknown to him, the house was dangerous to those who might occupy it." In *Cutter* v. *Hamlen,* 147 Mass. 471, it was said (page 474), "It is settled that a landlord may be liable for not disclosing a concealed source of danger, known by him to be such, and not discoverable by the tenant. . . . But it is not enough that the landlord knows of the source of danger, unless also he knows, or common experience shows, that it is dangerous." In that case the landlord knew that there had recently been a death from diphtheria in the tenement and that the condition of the drains was bad. Of the latter fact standing alone it was said, "we should have great difficulty in saying that there was anything to go to the jury. The general rule between landlord and tenant, as well as between buyer and seller, is *caveat emptor.* . . . And this rule cannot be eluded by showing that the tenant did not know of a defect, that the landlord did, and then asking a jury to pronounce it a secret source of danger. . . . But when we put together the facts that there had been diphtheria in the house, and that the drains were defective, we can hardly say that the jury might not have been warranted in finding that the defendant knew, or ought to have known, as a prudent man, that this combination of circumstances introduced a special danger of infection from the drains." Manifestly the words "or ought to have known" in this connection do not mean that a landlord may be held liable for a knowledge of specific dangers in the tenement which a jury may think a prudent landlord ought to have known by making the inspection in their opinion required of him. These words mean only that, when he knows the specific facts concerning the tenement, whether he can be held liable for the danger arising therefrom, may in appropriate instances rest upon what may be thought by a jury that he ought to have known as an inference to be drawn from those specific facts according to the teachings of common experience. That is far different from allowing anybody to infer a duty of inspection and then to impose liability for that which it may be thought "he ought to have known" if he had performed such inferred duty. There is no duty of inspection resting on the landlord in such a case. It is only when the knowledge of specific facts concerning the con-

dition of the tenement, constituting defects, has come to him, that the question of liability can arise. In this connection it was said (page 474), "it is not enough that the landlord knows of the source of danger, unless also he knows, or common experience shows, that it is dangerous. He is bound at his peril to know the teachings of common experience, but he is not bound to foresee results of which common experience would not warn him, and which only a specialist would apprehend." Plainly this case affords no foundation for a contention that a landlord can be held liable for a defective condition of a tenement of which in fact he has no knowledge but of which a jury may think in the exercise of good management he ought to have known. Wherever the words have been used in any of our decisions respecting liability for defects in demised premises, to the effect that the landlord knew or ought to have known of them, they have been used in this sense. In no case has the rule, that the landlord must have actual knowledge of the defect before liability for failure to disclose can arise, in the absence of fraud, misrepresentation or warranty, been in any particular weakened, qualified or changed. In no case has a landlord been held liable for failure to disclose defects or dangers in the demised premises of which he had no actual knowledge. *Minor* v. *Sharon,* 112 Mass. 477. *Martin* v. *Richards,* 155 Mass. 381. *Phelan* v. *Fitzpatrick,* 188 Mass. 237. *Walsh* v. *Schmidt,* 206 Mass. 405. *Szathmary* v. *Adams,* 166 Mass. 145. *Booth* v. *Merriam,* 155 Mass. 521, 522. *Shute* v. *Bills,* 191 Mass. 433, 436. *Green* v. *Nightingale,* 211 Mass. 273, 276. The language in *Maionica* v. *Piscopo,* 217 Mass. 324, 327, was used with reference to a common passageway possession of which was retained by the landlord and with respect to which his liability is different and more onerous. *Flanagan* v. *Welch,* 220 Mass. 186.

The precise question raised in the case at bar was expressly presented for decision in *O'Malley* v. *Twenty-Five Associates,* 178 Mass. 555. The jury there were instructed that "if the tenant did not know and could not have known by the exercise of ordinary care and inspection what the condition of the tackle [a part of the demised premises or an appliance common to several tenants] was, but the defendant did know or ought to have known that it was unsuitable, they might find for the plaintiff." This instruction was held to be erroneous. The court, by Chief Justice Holmes,

said: "The ruling, it will be seen, made the defendant answerable not only for what it knew, but for what the jury might say that it ought to have known. . . . But when attention has been directed in any way to the condition of things at the beginning of the lease, it has been recognized as the general rule that the tenant must take things as he finds them, and if they then are unsafe, cannot complain. There is no implied undertaking or duty on the landlord's part to make things better than they are. . . . The only extension of liability beyond this limit is in the case of hidden defects actually known to exist. As the landlord makes no contract concerning the condition of the premises at the time, the only ground on which he can be held is that he unconscionably is leading the other party into a trap. . . . The duty when it exists is only a duty to inform the tenant of the danger, and 'there can be no such duty without knowledge of the defect.' *Bowe* v. *Hunking*, 135 Mass. 380, 383. . . . Our decision seems to us in accord with the more authoritative cases. *Doyle* v. *Union Pacific Railway*, 147 U. S. 413, 424, *et seq.* *Edwards* v. *New York & Harlem Railroad*, 98 N. Y. 245. . . . we can see no ground for holding a landlord liable in tort for . . . not mentioning what he did not know."

The force of this decision has never been impaired or shaken or doubted. The latest pronouncements of the court are to the same effect. In *Angevine* v. *Hewitson*, 235 Mass. 126, at page 129 . it was said, "It is plain that the lessee . . . took the premises . . . in the condition they were or appeared to be in at the time of the letting, unless the defects complained of were hidden, were in the nature of a trap, were known to the landlord, and were unknown to the lessee." In *Mansell* v. *Hands*, 235 Mass. 253, at page 255 it was said, "If the defendant did not know of any concealed defect or conditions which might make the use of the premises dangerous, no liability has been shown, and the verdicts were ordered rightly" in favor of the defendant.

It is plain that the rule is now as it has been that, in the absence of express contract or of fraud or misrepresentation, a tenant cannot recover of his landlord for injuries resulting from a hidden defect in the demised premises unless the landlord actually knew of the facts constituting the defect and failed to disclose the defect to the tenant. There is no duty resting on the landlord to make, for the benefit of the tenant, search for hidden defects. Whether

the landlord ought to have known of the defect is an inquiry which does not arise in this connection and which has no relevancy upon the question of liability.

The ruling that Mrs. Beatty was the tenant of the defendant was right. Occupancy of the premises from March 27, 1919, to May 1, 1919, when the term began, without payment of rent, was a concession in view of or for the sake of inducing the lease. There was no rational ground for the inference of any other relation than that of landlord and tenant. It was not that of inviter and invitee. She entered into occupancy knowing that the new railing and floor of the porch had not been put in. This is not a case of a negligent doing of repairs, but where in ordinary course the time had not come for doing them.

The defendant's exceptions must be sustained. The case appears to have been fully tried and all the facts developed. On them the plaintiff cannot recover. Judgment may be entered for the defendant under G. L. c. 231, § 122.

*So ordered.*