MARJORIE E. PITTSLEY, administratrix, *vs.* ACUSHNET
SAW MILLS COMPANY.

Bristol.    November 30, 1937. — January 31, 1938.

Present: RUGG, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Landlord and Tenant,* Landlord's liability to tenant or his family or his
invitee.

The owner of an ice run was not liable for injury to an employee of a
lessee of the run resulting from a hidden defect existing at the time
of the making of the lease but unknown to the lessor and lessee.

TORT. Writ in the Superior Court dated March 30, 1936.

A verdict for the defendant was ordered by *Walsh,* J.
The plaintiff alleged exceptions.

The case was submitted on briefs.

*G. H. Young,* for the plaintiff.

*T. F. O'Brien,* for the defendant.

DOLAN, J. This is an action of tort to recover damages
for the death and conscious suffering of Myron Pittsley,
resulting from an accident on March 1, 1936. The case
was tried to a jury and at the close of the evidence, on
motion of the defendant, the judge directed a verdict for
the defendant.

On the day of the accident the intestate was standing on
an ice run or staging attached to an ice house owned by
the defendant. The ice run collapsed and the intestate
suffered injuries from which he died on the following day.
Under a written agreement dated December 2, 1935, the
defendant granted to the North End Artificial Ice Com-
pany the right to use, improve and benefit from certain ice
properties "until December 1, 1936 to harvest, store, and
merchandise ice." The agreement provided that the gran-
tee "shall maintain the property in good condition at its
own expense."

The ice house where the accident occurred was one of
seven which were included within the agreement. The

defendant had owned them since their construction about ten years prior to the accident. They had been built by the intestate and from the time of their construction he had always been about the premises when ice was being harvested, either in the role of proprietor or manager. During 1933, 1934, and 1935 the premises had been occupied by Elizabeth Allen, who was doing business under the name of the "North End Artificial Ice Company." During those years and up to the time of the accident the intestate was in her employ as superintendent. He was the person who decided what repairs were to be made to the ice houses, ice runs or stagings and "in what manner and to what extent. . . . Everything was left to . . . [him] to make the repairs," and during 1933, 1934 and 1935 repairs had been made on the property under his direction. The defendant had never directly undertaken any repairs of the property after its acquisition, and the repairs made in the years just referred to were made under the instructions of the intestate's employer to order such repairs as were necessary. The jury could have found that "the section of the ice run on which the plaintiff's intestate . . . [was] standing collapsed because of the pulling through the end of the supporting horizontal timber of the eyebolt which secured it to the section"; that "this occurred because of the rotted condition of the wood"; and that "this condition constituted a defect which was in existence on or before December 2, 1935, when the agreement of the defendant with the North End Artificial Ice Company was executed."

The rights of the intestate against the defendant are no greater than those of his employer, the lessee, in the same circumstances. *Rooney* v. *Merliss*, 258 Mass. 407, 409. *Boudreau* v. *Johnson*, 241 Mass. 12, 15. *Blaufarb* v. *Drooker*, 251 Mass. 201, 204. *Goodman* v. *Provincetown*, 283 Mass. 457, 462. *Bronstein* v. *Boston & Maine Railroad*, 285 Mass. 491, 495. *Garland* v. *Stetson*, 292 Mass. 95, 99. The intestate's employer took the risk of the quality of the premises. There was no express or implied warranty by the defendant that the premises were free from defects,

nor did it misrepresent the condition of the premises. The defect was not an open or obvious one and there was no covenant between the defendant and the intestate's employer that the former would put the premises in proper repair. On the contrary, the covenant as to this subject matter was that the lessee, the intestate's employer, "shall maintain the property in good condition at its own expense." There was no evidence which would have warranted the jury in finding that the defendant had any actual knowledge of the defect at the time of the execution of the lease. In all the circumstances disclosed it follows that the intestate's employer took the premises as she found them and assumed "the risk of their quality . . . . There is no presumption that they . . . [were] in good repair or fit for occupancy. There is no duty implied from the relation of landlord and tenant that the former will keep the premises in a safe condition during occupancy by the latter, or in the same condition in which they were or appeared to be at the beginning of the tenancy. In general the tenant cannot recover against his landlord for personal injuries caused by the defective condition of the premises let unless the landlord agrees to repair, makes the repairs and is negligent in making them." *Stumpf* v. *Leland,* 242 Mass. 168, 171. The case at bar does not come within the exception to the foregoing rule, where the landlord knows of a hidden defect of which the tenant is ignorant and fails to notify the latter of its existence, thereby becoming liable for injuries arising from such failure of duty. *Stumpf* v. *Leland,* 242 Mass. 168, 171. See also *O'Malley* v. *Twenty-five Associates,* 178 Mass. 555.

*Exceptions overruled.*