FRANK STARR vs. KALMEN CHAFITZ & another.

Worcester. September 25, 1944. — October 26, 1944.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Negligence*, Employer's liability: appliance, place of work, cutting machine, junk yard.

An action against an employer, engaged in the scrap iron and metal business and not insured under the workmen's compensation act, could not be maintained for personal injuries sustained by an employee, who had been employed to operate a scrap cutting machine when the ground around it was "in good order" and at a later date had begun operating it when there was "some junk" around it, and while attempting to extract from it a piece of pipe that "got stuck in" it, "slipped on a piece of pipe or something underneath" and fell into the machine, where the evidence did not warrant a finding that any negligence of the employer as to the machine itself caused the accident or that the employee slipped on something that had not fallen during his own cutting operations.

TORT. Writ in the Superior Court dated March 10, 1939.

The case was tried before *Beaudreau, J.*

*J. Y. Young,* (*Nunziato Fusaro* with him,) for the defendants.

*H. J. Dumas,* for the plaintiff.

WILKINS, J. This is an action of tort for personal injuries received by an employee in the course of his employment by the defendants, who were not insured under the workmen's compensation act. The defendants filed a motion for a directed verdict, which was denied subject to their exception. The jury returned a verdict for the plaintiff. The defendants thereafter moved that a verdict be entered in their favor under leave reserved. The motion was denied, and the defendants excepted.

The jury could have found the following facts: The defendants were engaged in the scrap iron and metal business. For four months before March 4, 1939, the date of the injury, the plaintiff had been in their employ as a general laborer, picking up scrap iron, loading trucks, and removing dirt.

In the yard there was a machine for cutting up metal, which weighed six tons and consisted of a stationary base and a moving arm operated by an electric motor, gears, and pinions. To each portion there was fastened a blade or knife. The blades were removable, and were fastened to the base and to the arm by four bolts held by nuts and check nuts. Operation was on the principle of a pair of shears except that the lower blade was stationary. The operator stood on the right side about three feet from the base, and fed the metals in between the blades as they opened up. There were no guards on the machine. About two weeks before the accident, at the request of Philip Chafitz, who was a son of one of the defendants, and who had charge of the yard, the plaintiff ran the machine an entire day without trouble. On that occasion "a man kept the place clean," and the ground around the machine was "in good order." Thereafter the plaintiff worked as a general laborer, picking up scrap iron and loading it onto trucks. On March 3 about 3 P.M. Philip Chafitz asked the plaintiff to run the machine the next day. Chafitz, who was then working on the machine "because it was stuck," said that "he would fix it and tighten it; that the cutters were loose and they should be tightened." Later in the day Philip Chafitz told him that the "machine was already fixed, he fixed the knives." At some unstated time on that day Philip Chafitz told the plaintiff to pick up "all the scrap iron around and put it on the side." It did not appear whether the plaintiff did so. On March 3 the plaintiff knew that there were pieces of metal and pipe on the ground around the machine. At no time between 3 P.M. and the time he left the yard that day did the plaintiff go over to take a look at the machine. He heard it operated between 3 P.M. and 5 P.M., and a little later when he got ready to leave he saw "some junk, around the machine." When he came to work at 7 A.M. on March 4 "the ground around the machine was the same." "He made a foot path to the machine by doing away with some of the scrap iron that was there." He oiled and greased the machine, started it and allowed it to warm up for about an hour. He then began cutting iron and pipes. At first there

was no trouble, although he noticed a knife was loose. After the plaintiff had cut five pieces "of pipe and various things like that" he began to cut a "washing machine" pipe which was about one or one and one half inches in diameter and consisted of metal the thickness of a fingernail. While he was so engaged, the pipe "got stuck in the machine." He sought to pull it out without shutting off the power. In trying to free the piece "it got loose and the cutter went up," his left foot "slipped on a piece of pipe or something underneath," and he "lost . . . [his] balance, went backwards and then went into the machine," injuring his hand. He had his hand "right in the stationary knife as the other knife came down." The condition of the ground was "dirty" and "piled up with junk." There was "junk on the ground around the machine," small pieces of steel rod and pipe "probably an inch" long.

As the defendants were not insured under the workmen's compensation act, the plaintiff merely had to prove that his injury was caused by negligence on the part of the defendants or their agents. *Roberts* v. *Frank's Inc.* 314 Mass. 42, 45. *Doherty* v. *Paul's for Tires, Inc.* 314 Mass. 83, 85. See G. L. (Ter. Ed.) c. 152, § 66.

There was no evidence how the pipe became stuck in the machine or that this was attributable to any negligence on the part of the defendants with respect to the machine itself. If the blade was loose, and loose because of the negligence of Chafitz, there was no evidence of any causal connection between that condition and the plaintiff's injury. "Ordinarily one cannot be held liable for conduct having no causal connection with harm constituting the plaintiff's cause of action." *Hathaway* v. *Huntley*, 284 Mass. 587, 592. *Walker* v. *Benz Kid Co.* 279 Mass. 533, 537–538. There likewise was no evidence that the defendants were negligent as to the condition of the ground. A junk yard must be expected to contain junk, and a cutting machine to give off cuttings. "It is implied in the contract of employment that the person employed is to work upon the premises in the condition in which, if he makes a reasonable examination, the premises will appear to be, and

that the employer is not obliged to raise them to a higher standard for the employee's benefit. The employee, as it is said, assumes the risk of the condition of the premises, except as to defects which such an examination would fail to reveal." *Keough* v. *E. M. Loew's, Inc.* 303 Mass. 364, 365, and cases cited. While it could be found that the ground was "in good order" the first time that the plaintiff ran the machine, and that there were small pieces of steel rod and pipe on the ground at the time of the accident, it is left in doubt whether the plaintiff did not fall by reason of slipping on something which had fallen during his own five cutting operations. *Mucha* v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592, 596–597, and cases cited. *Howe* v. *Boston*, 311 Mass. 278, 281. *Ruffin* v. *Coca Cola Bottling Co.* 311 Mass. 514, 516. There was no obligation on the defendants to provide someone to pick up cuttings as they were dropped in the course of the plaintiff's work. The cases relied upon by the plaintiff are distinguishable on their facts.

On the evidence there was error in denying the defendants' motions, first for a directed verdict and later for entry of a verdict in their favor under leave reserved.

*Exceptions sustained.*