MARY M. DAVENPORT *vs.* CHARLES G. SQUIBB.

Middlesex.     December 6, 1946. — January 8, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Landlord and Tenant,* Unavoidable casualty, Seasonal letting of furnished dwelling. *Contract,* Implied. *Warranty. Words,* "Unavoidable casualty."

An infestation of a leased dwelling by a swarm of beetles, which did not cause actual physical destruction of or damage to the premises, even though it was an "unavoidable casualty" and rendered the premises unfit for occupancy by the lessee, did not make operative a clause of the lease providing for abatement or suspension of the rent, or termination of the lease, in case the premises during the term should be "destroyed or damaged by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habitation."

Evidence which did not warrant a finding that beetles were present in or about a furnished seashore dwelling at the time of its letting for a summer, but at most that a swarm of beetles invading the premises during the summer and rendering them unfit for occupancy were attracted there by the bright lights of the dwelling after the letting and after the tenant had taken possession, would not have supported a finding of breach by the landlord of the implied warranty of fitness of the premises for occupancy.

CONTRACT. Writ in the Third District Court of Eastern Middlesex dated November 8, 1944.

The action was heard by *Counihan*, J., who found for the plaintiff. A report to the Appellate Division was ordered dismissed, and the defendant appealed.

*J. Sidney Stone*, for the defendant.

*R. C. Evarts*, for the plaintiff.

RONAN, J. The defendant on May 15, 1944, leased a furnished house to the plaintiff for the period from June 1, 1944, to September 15, 1944, at a rental of $1,650, which the plaintiff paid. The lease provided that "in case the premises or any part thereof, during said term, be destroyed or damaged by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habitation," the rent should be abated or suspended until the premises were put in proper condition by the lessor or the lease might be terminated by the lessor. The demised premises consisted of a large house, all the rooms of which were located on one floor. There was evidence that the house had fifty-five windows and thirteen doors with windows in them; that the house was equipped with flood lights on each of the outside walls; that the premises had not been occupied since 1941; that they had been thoroughly cleaned during 1942; that the plaintiff took possession of the house on May 28, 1944; that about June 10, 1944, beetles began to appear in the bedrooms, at first few in number, then in greater numbers, infesting all the rooms, and rendering the premises unfit for use and occupation by the plaintiff and members of her household; that fumigation of the premises at the expense of the defendant did not rid them of these pests, and the plaintiff vacated them on July 25, 1944. The judge found that the presence of the beetles constituted an unavoidable casualty, and that they were present on the grounds or in the dwelling house when the plaintiff took possession. He awarded damages to the plaintiff on the fourth count of the declaration, which alleged the execution of a lease; the payment of the entire rent in advance; that the premises were rendered unfit for use and habitation by an invasion of beetles; and that, while the lease provided that, in case the premises were destroyed or damaged by fire or other unavoidable casualty and rendered unfit for use and

habitation, the rent or a just proportional part of it should be abated or suspended until the premises should be put in proper condition by the lessor or the lease might be terminated at the election of the lessor, the defendant lessor did not suspend or abate the rent "and did not elect to terminate the lease."[1] The defendant appealed from the order of the Appellate Division dismissing the report.

The infestation of these premises by a swarm of beetles might well be found to be an unavoidable casualty. Their presence was not due to the fault of either the landlord or the tenant. "It was an extraordinary misfortune, outside the course of experience, which the defendant could not anticipate and which occurred entirely without fault on . . . [his] part." *Maynard* v. *Carey Construction Co.* 302 Mass. 530, 533. See *Tarle* v. *Park Drive Realty Inc.* 308 Mass. 550. It has been said that the phrase "unavoidable casualty" in a clause almost identical with that in the present lease "comprehends only damage or destruction arising from supervening and uncontrollable force or accident." *Welles* v. *Castles*, 3 Gray, 323, 325. These words commonly appear in those provisions of a lease where the parties wish to define their rights in case the premises are destroyed or damaged by fire. Such a provision probably came into general use in order to avoid the hardship of requiring the lessee to pay the full rental for the demised term where the property had been destroyed or damaged during the term. *Fowler* v. *Bott*, 6 Mass. 63. *Leavitt* v. *Fletcher*, 10 Allen, 119. *Israel* v. *Beale*, 270 Mass. 61. Cases have frequently arisen relative to the application of fire clauses, where the demised premises have been damaged by fire or other unavoidable casualty, in determining whether there should be an abatement of rent or whether the nature and extent of the damage were such as to permit the exercise of the authority given by the lease to one party or the other to terminate the lease. Fire clauses in a form similar to the clause in the instant lease, however, do not become operative in the absence of actual destruction or physical damage resulting from fire or other

---

[1] The judge refused requests by the defendant for rulings that the evidence did not warrant a finding for the plaintiff on the fourth count. — REPORTER.

unavoidable casualty to the demised premises or the building of which they were a part. *Wall* v. *Hinds*, 4 Gray, 256. *Rogers* v. *Snow*, 118 Mass. 118. *Hunnewell* v. *Bangs*, 161 Mass. 132. *D. A. Schulte, Inc.* v. *American Realty Corp.* 256 Mass. 258. *Norris Drug Co.* v. *Gainsboro Building Corp.* 260 Mass. 117. *Clayton* v. *Perry*, 276 Mass. 12. *Allen* v. *Kilpatrick*, 277 Mass. 237. *H. W. Robinson Carpet Co.* v. *Fletcher*, 315 Mass. 350. But in the present case there was no evidence that the beetles destroyed or damaged the demised premises, and that as a result of such destruction or damage the premises were "thereby rendered unfit for use and habitation." The judge was wrong in finding for the plaintiff on this ground, and in refusing the defendant's tenth request that the presence of the beetles did not come within the provisions of the fire clause.

We next inquire whether the evidence was sufficient to prove a breach of warranty by the defendant at the time he leased the premises to the plaintiff. [1] When the defendant let for the summer a furnished house at the seashore, he impliedly agreed that the house was reasonably suitable for immediate use and occupancy by the tenant. *Dutton* v. *Gerrish*, 9 Cush. 89, 94. *Ingalls* v. *Hobbs*, 156 Mass. 348, 350. *Bolieau* v. *Traiser*, 253 Mass. 346, 349. *Hacker* v. *Nitschke*, 310 Mass. 754, 757. *Ackarey* v. *Carbonaro*, *ante*, 537. *Smith* v. *Marrable*, 11 M. & W. 5. *Wilson* v. *Finch Hatton*, 2 Ex. D. 336. *Young* v. *Povich*, 121 Maine, 141. 139 Am. L. R. 261. The burden was upon the tenant to show that the condition of the premises at the time the tenancy began was such as to render them unfit for occupancy and, without deciding, we will assume in the tenant's favor that an existing condition of such a nature that it would of its own force generate in the immediate future a situation that would render the house uninhabitable would constitute a breach of warranty. It was said in *Bolieau* v. *Traiser*, 253 Mass. 346, 349–350, that a condition that the premises are fit for habitation "is implied only with regard

---

[1] The second count of the declaration was based on such a warranty. The judge denied requests by the defendant for rulings that the evidence did not warrant a finding for the plaintiff on the second count. — REPORTER.

to the state of the premises at the beginning of the tenancy and does not cover defects which arise later," citing *Sarson v. Roberts*, [1895] 2 Q. B. 395, and *Chester v. Powell*, 52 L. T. (N. S.) 722. See *Chelefou v. Springfield Institution for Savings*, 297 Mass. 236, 239.

In the middle of July beetles were seen on the grass and in bushes and under that part of the house where there was no cellar, but the only evidence as to the cause of the invasion of the premises by the beetles was furnished by an entomologist, who testified that the beetles live on the ground and in underbrush and thick vegetation where they find their food; that the adult life of one of these beetles is approximately ten weeks; that they are migratory during this ten weeks' period and lay their eggs in the soil; that the eggs hatch in two weeks and the young grubs hibernate in the ground, become partly grown by winter, and change to beetles in the spring; that where beetles are in a house there is no way of telling where they came from except that they would be expected to come from an area that was favorable to their habits, and this could be a great distance away; that they are not attracted by woods but are attracted by bright lights; and that he could not tell why these beetles came into the demised premises except for the attraction of the lights on the premises, and "he thinks that is how they would come, that they went to one house instead of another because that house had brighter lights or more of them." The judge found that when the plaintiff took possession the beetles were present either in the house or on the grounds. The evidence, however, does not support that finding. No beetle was seen on the premises prior to June 10, 1944. This is significant, for if they were bred upon the demised premises it is reasonable to expect that they would appear upon the grounds during the preceding spring. They could not have been attracted by lights in 1941 or subsequently thereto and up to the time the plaintiff took possession, as the evidence shows that the premises were unoccupied during that period. It is a mere matter of conjecture and surmise whether they were hatched in the preceding winter upon the grounds of the demised premises. The testimony

of the expert did not indicate that they were, and his opinion on the contrary indicates that they were attracted to the premises by the lights. The plaintiff has not sustained the burden of showing that there was a breach of the implied warranty that the premises were fit for occupancy, and there was error in the denial of the defendant's thirty-third request that the evidence did not warrant a finding that the house was unfit for habitation at the time of the hiring or at the beginning of the term. *Smith* v. *First National Bank,* 99 Mass. 605. *Donaldson* v. *New York, New Haven & Hartford Railroad,* 188 Mass. 484. *Saxe* v. *Walworth Manuf. Co.* 191 Mass. 338. *Childs* v. *American Express Co.* 197 Mass. 337. *Mucha* v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592. *Ruffin* v. *Coca Cola Bottling Co.* 311 Mass. 514. *Starr* v. *Chafitz,* 317 Mass. 227. *Gilmore* v. *Kilbourn,* 317 Mass. 358.

Perhaps it ought to be noted that one of the findings implies that there was a surrender of the lease. The plaintiff states in her brief that the decision of the trial judge did not turn on any question of surrender. This is in accord with the allegation in the declaration that the defendant did not accept a proffered surrender of the lease, and this allegation was of course binding upon the plaintiff. G. L. (Ter. Ed.) c. 231, § 87. *Snowling* v. *Plummer Granite Co.* 108 Mass. 100, 101. *Sullivan* v. *Ashfield,* 227 Mass. 24, 28.

The order of the Appellate Division is reversed and judgment is to be entered for the defendant.

*So ordered.*