RICHARD FUCCI & another *vs.* W. W. WELCH, INC.

Middlesex.    October 7, 1952. — November 26, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Negligence*, Crate, Dangerous article.

Assuming that employees of a defendant left a large wooden crate in the yard of certain premises in a broken condition after a refrigerator had been removed from it, evidence merely that an hour or more later a metal band or strap on the crate snapped and struck a child living on the premises would not warrant a finding of negligence on the part of the employees.

TORT. Writ in the Second District Court of Eastern Middlesex dated July 7, 1948.

Upon removal to the Superior Court, the action was tried before *Broadhurst*, J.

*Edward R. Langenbach*, for the defendant.

*John J. Foster*, (*Edward W. Foster* with him,) for the plaintiffs.

WILKINS, J. The minor plaintiff (hereinafter called the plaintiff), on April 10, 1948, when he was five years of age, was hurt by coming into contact with a metal strap on a refrigerator packing case left in the yard of the premises where he lived by employees of the defendant. In this action of tort by the plaintiff for negligence, and by the plaintiff's father for consequential damages, there were verdicts for the plaintiffs. The defendant excepted to the denial of its motion for directed verdicts.

The house where the plaintiff lived with his parents on the second floor was owned by his aunt, Antonina Composto, who herself lived on the first floor. Mrs. Composto was remodeling her kitchen, and had purchased a new electric refrigerator from Reliable Supply Company, a dealer.[1] The

---

[1] An action against Reliable Supply Company was tried with the case at bar, and a verdict was directed for the defendant.

defendant, which was engaged in the transportation business, delivered a packing case containing the refrigerator on April 10, 1948. About noon on that date some men brought the refrigerator into the kitchen and installed it. About 1:30 or 2 P.M., after the men had gone, Mrs. Composto heard the plaintiff scream, and his mother brought him into the house with his eye injured. Mrs. Composto then saw the crate for the first time. It was about four feet from the sidewalk on the path leading from the street to the back steps. She testified that the crate was "a very big box that took almost the whole place in the little alley which is narrow; that she meant the cement walk; that it is very close to the next building and she didn't think it is any more than about seven feet between one building and the other; that the crate which occupied most of the cement walk was a big high wooden box with a steel stripping all around; that it wasn't like a closed box, it being larger than the right size, and 'the ribbon like, the tin, was all around, was coming out on one side'; . . . that it [the crate] was standing up; that she only noticed the top of it and was too excited to notice how many strips were there; that she thinks there was more than one but only saw one, and she saw the one on the top was sticking out; that she cannot tell how near the top it was; that the crate was all opened up and she can't say how high it was; that it 'wasn't actually the height because it was half broke'; that it was broken wide enough to take the refrigerator out; that the top was broken; that it was a 9 cubic feet refrigerator; that it was as high as the top of the witness's head and she is five feet, two inches tall; that the crate was made of wood with some strips all around; it wasn't smashed in pieces but it was open; that 'there was a whole box there, but there was enough off the box — it was just not much'; that the 'whole thing was hanging off.'"

The only testimony as to the accident itself came from the plaintiff's mother. She was in Mrs. Composto's kitchen, and had let her two boys, the older of whom was the plaintiff, out to play. "They were going out there, and there was

this big crate there, because I was looking out the window to see where they were going. I saw the band snap and hit him." She saw "A band. There was a flat steel band." The crate was in the walk about a foot and one half in from the street. "[T]his band hit him, and he was crying, 'My eye.'"

We assume, without deciding, that it could have been found that the box was left on the cement walk, in the condition described in the testimony, by employees of the defendant, notwithstanding the fact that there was no evidence that the defendant was engaged in anything but the transportation business and the further fact that there was an interval of at least one hour after the installation before the plaintiff was injured.

Even with these important assumptions, it was still left to conjecture and surmise what caused the band — wherever and whatever it was — to snap. Much less was there evidence warranting a finding that any act of the defendant or its employees caused the band to snap, or that they should have foreseen that it would do so. There was at best no more than a series of uncertainties. *Gilmore* v. *Kilbourn*, 317 Mass. 358, 363. The testimony was entirely consistent with the absence of negligence on the part of the defendant. *Childs* v. *American Express Co.* 197 Mass. 337, 338–339. *Rankin* v. *Brockton Public Market, Inc.* 257 Mass. 6, 9–10. *Worcester* v. *L. Rocheford & Son, Inc.* 300 Mass. 261, 262. *Starr* v. *Chafitz*, 317 Mass. 227, 229–230. *LeBlanc* v. *Atlantic Building & Supply Co. Inc.* 323 Mass. 702, 705–706. Any resemblance of *Dennehy* v. *Jordan Marsh Co.* 321 Mass. 78, to the case at bar is wholly superficial. In the *Dennehy* case, the evidence was explicit that the plaintiff was injured on one of numerous nails which had been suffered to remain exposed on a sort of door formed by the opened side of the crate where he had been playing and through which he had been trying to emerge. There was no unexplained occurrence like the snapping of a band.

*Exceptions sustained.*

*Judgments for the defendant.*