*Northern District*

No. 5529

**HERBERT J. SPIRO**

v.

**MELVIN R. VanVOORHIS**

(September 13, 1961)

*Present:* Brooks, P. J., Eno & Northrup, JJ.

Case tried to *Artesani, J.,* in the Third District Court of Eastern Middlesex. No. 3419 of 1960.

*Brooks, P. J.* This is an action of contract wherein plaintiff seeks to recover rent for three months at the rate of $175 per month and for other damages arising from defendant's occupancy of a furnished house at 25 Day School Lane, Belmont, Massachusetts.

The answer is general denial, denial of defendant's signature on lease and claim that defendant was relieved from liability by acts of plaintiff, his agents, and servants, — which acts interfered with his quiet enjoyment of the premises.

*There was evidence tending to show the following:* Plaintiff owned a *furnished house*

at 25 Day School Lane, Belmont. This house he had rented to one Williams in June, 1959, under a written lease. In March, 1960, Williams assigned his interest in the lease to defendant after showing him the premises. At that time, there were in the house certain pieces of furniture which were not there when he took occupancy on April 1st. These had been removed by Williams when he vacated.

On April 6, 1960, one Trustman, Agent or Attorney for plaintiff, advised defendant by phone and by a letter that no heavy furniture such as beds were to be placed in the center of the upstairs study because of the weakness of the floor, also that the desk in the study should remain by the window and the furniture should remain along the outer walls and nothing against the bedroom walls.

Defendant on May 10, 1960, advised Trustman by telephone of his intention to vacate the premises June 1. He moved out June 3 and returned the keys to Trustman June 17, after an unsuccessful attempt with Trustman's approval, to rent the premises for the remainder of the period of the lease to one Ullom. On June 3, defendant moved into a home in Lexington to which he took title on June 8.

At the close of the trial, plaintiff made, *inter alia,* the following requests for rulings:

4. The vacating of the premises at 25 Day School Lane on June 2, 1960, by the defendant did not terminate the obligation of his part to

pay rent for said premises for the period June 1 to September 1, 1960.

6. To constitute a constructive eviction, there must be some act of a permanent character done by the landlord with the intention and effect of depriving the tenant of the enjoyment of the demised premises or some part of them, to which he yielded, abandoning of possession within a reasonable time.

The Court denied both requests, and found the following Facts:

Sometime prior to the execution of the lease the defendant was shown the premises and furnishings therein, but that when the defendant took occupancy on April 1st the furnishings then on the premises were substantially different and inferior to those that were there when the premises were shown.

Shortly after the lease was signed and occupancy taken, the defendant was advised by the plaintiff's agent that part of the premises were in a weakened condition, which condition could not have been discovered by the defendant on his examination of the premises and further, the defendant could not place furniture in the middle of said portion of the premises. As a result of this the defendant became justifiably fearful for the safety of himself and his family.

With the removal of the furnishings and others being substituted, the terms of the tenancy were not complied with and the deviation was material to the tenancy. Changes of furnishings and the weakened condition of the premises amounted to a constructive eviction.

The court ruled that the plaintiff was not entitled to rent from the time the defendant left the premises, and found for the defendant.

The plaintiff claims to be aggrieved by:

1. The trial judge's error in refusing to grant plaintiff's 6th request for ruling relating to what constitutes a constructive eviction.

2. The trial judge's error in finding that the changes of furnishing and the weakened condition of the premises amounted to a constructive eviction.

3. The decision of the trial judge is erroneous in that he made no finding that the defendant abandoned possession of the premises.

4. The decision of the trial judge is erroneous in that he made no findings that any abandonment by the defendant was made within a reasonable time.

Two grounds are alleged by defendant as justification for vacating the premises: *First,* that some of the furnishings which were in the premises shown him in March were not there when he started his occupation April 1; *second,* that after he started his occupation, — namely, on April 6, he was informed that the floors were weak in spots and that furniture should not be placed at certain points.

As to the *first excuse* for vacating premises, the time for defendant to raise the question of the removal of the furnishings was when he entered to occupy the premises and noticed that certain furnishings had been removed.

In our opinion, this ground is not an adequate excuse for vacating the premises.

As to the *second ground* for vacating the premises, their condition of structural weakness was something defendant did not and could not have known at the time of taking occupancy. Two questions arise in this regard: Did defendant take the premises without any implied agreement of fitness? Also, Was he stopped from raising this question because he did not notify plaintiff's agent for some 5 weeks after learning of the weakness of the floors?

The trial judge held there was a constructive eviction. It has been generally held that one who lets an unfurnished building to be occupied as a dwelling house does not impliedly agree that it is fit for habitation. *Dutton v. Gerrish,* 9 Cush. 89, 93, 94; *Stevens v. Pierce,* 151 Mass. 207; *Barnett v. Clark,* 225 Mass. 185, 188; *Stumpf. v. Leland,* 242 Mass. 168, 171; *Bolieau v. Traiser,* 253 Mass. 346, 348; *Pittsley v. Acushnet Saw Mills Company,* 299 Mass. 252; *Gade v. Nat. Creamery Co.,* 324 Mass. 515, 518. However, our Courts have said that there are good reasons why a different rule should apply to one who hires a furnished house for a short period which was the case here, and that the rule of *Caveat Emptor* which would apply to an unfurnished house would often work injustice if applied to a case such as the one before us. *Ingalls v. Hobbs,* 156 Mass. 348; *Littlehale v. Osgood,* 161 Mass. 340, 343; *Chelefou v. Springfield Inst. for Sav.,* 297

Mass. 236, 239; *Hacker v. Nitschke,* 310 Mass. 754.

The trial court held that the premises were not fit for immediate occupation by defendant inasmuch as the floors were weak and that such condition of the premises amounted to a constructive eviction.

Apart from the doctrine of constructive eviction, the defendant is not liable for the rent in this case because the landlord broke the contract of implied fitness. The premises were unsafe, and therefore, unfit for habitation. In other words, the defendant did not receive what he bargained for and was therefore entitled to repudiate the lease on the ground of breach of contract by the landlord.

In *Hacker v. Nitschke,* 310 Mass. 754, a suit in both tort and contract, the court said:

> "Upon letting of the completely furnished house for immediate occupancy, an implied agreement arose that the house and its appointments were fit for the use for which they were apparently intended. The jury could find that it was a breach of that agreement with respect to the (defective) ladder and that the plaintiff suffered injuries in consequence of that breach. The plaintiff was entitled to go to the jury on the basis of breach of contract."

In *Davenport v. Squibb,* 320 Mass. 629, a case in contract in which the tenant sued the landlord because of an infestation of beetles, the court said at page 632:

> "When the defendant leased for the summer a

furnished house at the seashore, he impliedly agreed that the house was reasonably suitable for immediate use and occupancy by the tenant. The burden was upon the tenant to show that the condition of the premises at the time the tenancy began was such as to render them unfit for occupancy and without deciding, we will assume in the tenants' favor that an existing condition of such a nature that it would of its own force generate in the immediate future a situation that would render the house uninhabitable would constitute a breach of warranty."

The trial court had found that there was a breach of warranty. This finding was reversed by the Supreme Court on the ground that there was no evidence that the beetles or the grubs were on the premises at the time of the letting. In the case before us, the condition complained of did exist at the time of the letting.

The question whether defendant's delay until May 10 before notifying plaintiff of his intention to vacate the premises was so unreasonable as to estop him from raising that issue was a question of fact which the Judge resolved in favor of defendant. This court will not reverse the trial court on questions of fact unless he was plainly wrong. *Moss v. Old Colony Trust Co.,* 246 Mass. 139, 143; *Treas. & Rec. Gen. v. MacDale, Wharehouse Co.,* 262 Mass. 588, 592. *Costonis v. Medford Housing Authority,* §61 AS 1153. We are not prepared in this instance to hold that the judge was in error on this point.

Accordingly, there being no error in the findings or rulings, the report is to be dismissed.

Nutter, McClellan & Fish of Boston, for the Plaintiff.

John W. Dowcott of Boston, for the Defendant.