*Southern District*
## DOROTHY M. HORTON
v.
## DANA M. MARSTON d/b/a
## CAPTAIN MARSTON'S VILLAGE

*Present*: Nash, C.J., Cox and Murphy, JJ.

Case tried to *Horrocks, J.* in the First District Court of Barnstable No. 21910.

*Cox, J.* In this action of tort or contract the plaintiff seeks recovery for personal injuries sustained by her on May 8, 1963 as the result of an explosion which occurred as she was lighting one of the burners on the gas stove on the premises which she was then occupying as a tenant under a lease from the defendant.

The declaration contains four counts. The first three counts are in tort and are based upon negligence of the defendant in failing to warn the plaintiff of a known hidden defect in the premises. The fourth count is in con-

tract. It is the only one with which we are concerned. It alleges in substance that the plaintiff rented from the defendant a fully furnished cottage and that there was, at the time of the letting, an implied agreement that it was fit for habitation. That in fact, at that time, the premists, particularly the gas stove in the kitchen, was defective and unsafe, as a consequence of which there was an explosion which injured the plaintiff.

The justice found that the defendant had no knowledge of the defective condition of the stove and was not negligent. He found for the plaintiff on count 4 in the sum of $1800.00. He specifically found that there was an implied agreement by the defendant that the house and its appointments were in suitable condition for occupation at the time of the letting; that the stove was not in such a suitable condition and that the plaintiff is entitled to recover. The judge specially found, and there was evidence to support his finding, "that the oven of the stove was insulated in a defective manner and that the extreme heat from the oven either consumed so much oxygen on the top of the stove or so heated the air that the fourth burner had gone out and that gas had accumulated on top of the stove. I further find that the wall and side cabinets were too close to the burner, closer than allowed by law. I find that these facts caused a gas accumulation and when the plaintiff struck the match, it caused an explosion." He found there was

no express agreement by the defendant to keep the premises suitable for occupancy.

The case was reported for our determination because the defendant claims to be aggrieved by the denial of his request for a ruling that the evidence required a finding for the defendant.

The defendant contends that he has not been identified nor shown to have been in control of the premises. He also contends that there is no implied agreement of fitness for occupation applicable to a lease of a fully furnished cottage for a term of nearly nine months.

It is not disputed that on *September* 4, 1962 the defendant leased to the plaintiff a cottage in Osterville fully furnished for a term ending *May* 31, 1963. It could have been found that the gas stove was defective at the time of the letting and the same defective condition was responsible for the explosion which injured the plaintiff on *May* 8, 1963, over eight months later. The condition of the gas stove could be found to have made the cottage unfit for habitation at the outset although the condition was, as the justice found, unknown to the defendant. The defendant makes no contention to the contrary. The decisive question is therefore presented whether there was an implied agreement by the defendant that the cottage was fit for immediate use as a dwelling for a breach of which the defendant is to be held responsible to the plaintiff for damages for

injuries she sustained on May 8, 1963.

"It is established firmly as the law of Massachusetts that in the ordinary letting of real estate there is no implied undertaking by the lessor that the premises are fit for occupancy, and there is no liability on the lessor for injury which results from a defective condition of the premises of which he and those who act for him in the letting are ignorant. There is no obligation on the lessor to examine and inform himself of the condition of the premises before leasing them. The law is clearly and forcibly stated with sufficient citation of authority in *Stumpf v. Leland,* 242 Mass. 168." There is an exception to that principle of law. "The law of Massachusetts recognizes that in a lease of a furnished house, in some cases, there is an implied condition that the premises are fit for habitation. The case of *Ingalls v. Hobbs,* 156 Mass. 348, generally cited as an authority for this exception, limited the decision very carefully to its particular facts. . . The implied condition that the premises are fit for habitation is based upon an inference that the lessee intends immediately to occupy the premises as they stand. . . . . Moreover, the condition is implied only with regard to the state of the premises at the beginning of the tenancy and does not cover defects which arise later." The quotations are from *Bolieau v. Traiser,* 253 Mass. 346, 348-350. In that case it was held that a defect in a floor which caused injury nearly four months after the letting

could not be found by inference to have existed at the time of the letting, and that a very considerable part of the furnishings were supplied by the tenant. The case held that the exception stated in *Ingalls v. Hobbs, supra,* to the general rule did not apply and ordered judgment for the defendant landlord. In the case now under consideration the cottage was rented fully furnished and it is not in issue that the dangerous gas stove condition existed at the time of the letting on *September* 4, 1962. In those respects it differs from *Bolieau v. Traiser,* 253 Mass. 346. But *Bolieau v. Traiser* in addition to stating the general rule and its exception emphasizes that *Ingalls v. Hobbs* "limited the decision very carefully to its particular facts."

*Ingalls v. Hobbs,* 156 Mass. 348 was an action to recover rent for a fully furnished house let for the summer season. When the tenant took possession the place was found to be infested with bugs rendering it unfit for habitation. The court in ordering judgment for the defendant tenant and citing authorities, stated the general rule and its exception, as follows: "In the absence of fraud or a covenant, the purchaser of real estate, or the hirer of it, for a term however short, takes it as it is, and determines for himself whether it will serve the purpose for which he wants it. He may, and often does, contemplate making extensive repairs upon it or adapt it to his wants. But there are good reasons why a different rule should apply to one who

hires a furnished room or a furnished house for a few days or a few weeks or months. Its fitness for immediate use of a particular kind, as indicated by its appointments, is a far more important element entering into the contract than when there is a mere lease of real estate. One who lets for a *short term* a house provided with all furnishings and appointments for immediate residence may be supposed to contract in reference to a well understood purpose of the hirer to use it as a habitation. An important part of what the hirer pays for is the opportunity to enjoy it without delay, and without the expense of preparing it for use. It is very difficult, and often impossible, for one to determine on inspection whether the house and its appointments are fit for the use for which they are immediately wanted, and the doctrine *caveat emptor,* which is ordinarily applicable to a lessee of real estate, would often work injustice if applied to cases of this kind. It would be unreasonable to hold, under such circumstances, that the landlord does not impliedly agree that what he is letting is a house suitable for occupation in its condition at the time. This distinction between furnished and unfurnished houses, in reference to the construction of contracts for letting them, when there are no express agreements about their condition, has long been recognized in England, where it is held that there is an implied contract that a furnished house,

let for a short time, is in proper condition for immediate occupation as a dwelling."

"We are of opinion that in a lease of a completely furnished dwelling-house for a single season, at a summer watering place, there is an implied agreement that the house is fit for habitation, without greater preparation than one hiring it for a short time might reasonably be expected to make in appropriating it to the use for which it was designed."

It is to be especially noted that the exception applicable to a furnished house applies to hiring of it for "a few days or a few weeks or months . . . a short time." Leasing for a single season at a summer watering place was held to be a leasing for such a short time as to bring the case within the exception. Thus the exception appears to be limited to the letting of furnished premises *for a short time.*

No case has come to our attention which applies the exception to a lease of furnished premises for so long a period of time as nearly nine months. In *Littlehale v. Osgood,* 161 Mass. 340, the court observed that because the question of implied warranty that furnished premises are in good sanitary condition had not been raised at the trial, as shown by the bill of exceptions, "we have no occasion to consider whether the doctrine of that case (*Ingalls v. Hobbs*) *would apply when a* house is rented for a year."

In the case of *Chelefou v. Springfield Inst. for Savings,* 297 Mass. 236 the court, deny-

ing the application of the exception to a defect which arose after the commencement of a tenancy, cited *Ingalls v. Hobbs* and observed that "the case does not fall within a somewhat limited exception to this general rule applicable to a furnished room or house let for a short time for immediate occupancy." That case stressed a short time as an important element of the exception to the general rule.

*Hacker v. Nitschke,* 310 Mass. 754 involved the renting of a furnished cottage at Salisbury Beach for four weeks during the summer. A defect rendering the place unfit for its intended use was found. In applying the exception stated it was said that "*Ingalls v. Hobbs,* 156 Mass. 348, it was held that one, who lets for a short term of a few days, weeks, or months a fully furnished house supposedly equipped for immediate occupancy as a dwelling without the necessity of any fitting up or fuurnishing by the tenant, impliedly agrees that the house and its appointments are suitable for occupation in their condition at the time. This is a departure from the general rule and should be confined within narrow limits." The exception was held to be applicable in that case. See also *Ackarey v. Carbonaro,* 320 Mass. 537.

In *Davenport v. Squibb,* 320 Mass. 629, the exception applicable to a furnished house at the seashore leased for the period June 1 to September 15 was restated but was held

inapplicable as the cause complained of occurred after the letting.

*Gade v. National Creamery Co.,* 324 Mass. 516, 518-519, restates both the general rule that the lessee usually takes the premises as he finds them and the exception to that rule applicable to a furnished dwelling rented for a short time as stated in *Ingalls v. Hobbs, and* observes that in its application the exception "has been limited to factual conditions similar to those on which the decision was based." The court refused (page 519) to extend the application to the exeption in *Ingalls v. Hobbs* to the renting of a refrigeration room for commercial purposes "for an indefinite time."

In *Bowman v. Realty Operators Corp.,* 336 Mass. 395 there was a renting of a furnished cottage for the summer. The court significantly noted that the time of renting and the length of the plaintiff's occupancy did not appear. On June 20 there was a fire in the kitchen which contained a gas stove and an electric refrigerator. Damage to the plaintiff's property resulted. Recovery was sought on the strength of *Ingalls v. Hobbs.* The plaintiff was denied recovery as the cause was held to be conjectural.

In *Legere v. Asselta,* 342 Mass. 178 recovery was sought and denied for a cause (ice on frront steps) which occurred after the letting of a furnished bungalow for three months. The opinion states with reference to *Ingalls v. Hobbs* that "Knowlton, J., care-

fully defined the limits of the exception which it made to the doctrine of *caveat emptor* which is ordinarily applicable to a lessee of real estate." It cited with approval *Hacker v. Nitschke*, 310 Mass. 754, 156 in which it was held that *Ingalls v. Hobbs* "is a departure from the general rule and should be confined within narrow limits." The opinion concluded that "The house was fit for habitation when the plaintiff took possession. That is the extent of the defendant's warranty. It cannot be extended to mean that nothing will happen to the lessee even if the forces of nature operate seasonably in their usual way, such as converting water to ice."

*Boothman* v. *Lux*, 349 Mass. 426 was a case where the plaintiff rented a furnished room for a night. He received an injury on a portion of the premises found not to have been included in the renting. The court cited the exception stated in *Ingalls* v. *Hobbs* that a letting by a lessor of a fully furnished house "for a short term of a few days, weeks or months . . . impliedly agrees that the house and its appointments are suitable for occupation in their condition at the time." Significantly the court qualified the opinion by expressly stating that "We are not, however, to be understood as deciding that the arrangement with respect to the room amounted to a letting which would make applicable the rule of the *Ingalls* case." The inference is strong that a demise for a night is not

a letting "for a short term of a few days, weeks or months" and not within the strict and limited application of the *Ingalls* case.

The case of *Ingalls v. Hobbs* as an exception to the general rule, itself limited the exception as applicable only to fully furnished premises rented for a short period of time of a few days, weeks or months. Consistently the same legal position has been taken in the cases which have followed the *Ingalls* case up to the present time. A short time of a few days, weeks or months is an important element of the exception. Giving due consideration to the argument that the letting, being for the off-summer season, is similar to a letting for a summertime, we nevertheless, cannot in the light of the cases by which we must be guided, accept the contention that the warranty of fitness for immediate occupancy which the law implies against a lessor should be held applicable to a lease of a fully furnished cottage for a period of nearly nine months and hold the lessor liable for injuries resulting from a gas stove explosion more than eight months after occupancy began. To extend an implied warranty of fitness for immediate occupancy to such an unreasonable extent of time would in effect make the lessor an insurer by legal implication.

In our opinion the case at bar comes within the general rule. We must hold that it was reversible error to deny the defendant's

request that a finding for the defendant was required.

It has become unnecessary to consider the defendant's other contentions.

*An order should be entered reversing the finding for the plaintiff and awarding judgment to the defendant.*

Philip M. Boudreau of Hyannis for the Plaintiff.

Darling & McLaughlin of Waltham for the Defendant.