**William E. REDDING, Administrator, Plaintiff, Appellant,**

v.

**PICARD MOTOR SALES, INC., Defendant, Appellee.**

No. 7148.

United States Court of Appeals First Circuit.

Nov. 20, 1968.

Raymond A. LaFazia, Providence, R. I., with whom John F. McDonough, Providence, R. I., was on brief, for appellant.

Eugene V. Higgins, Providence, R. I., with whom Higgins & Slattery, Providence, R. I., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is a diversity suit for wrongful death arising out of an automobile accident. On April 13, 1962, the plaintiff's intestate, Richard W. Redding, accompanied by one Tucker, visited defendant, Picard Motor Sales, Inc. (Picard), a dealer in MG automobiles. About two weeks earlier Redding had road tested two sports cars at Picard's, a 1954 MG and a 1961 MGA. In the course of the second visit, Redding and Tucker, with the consent of Picard's sales manager, took the same two cars out for a test drive. While the 1961 model was being driven south on Rhode Island Route 146, it crossed the median divider and collided with another automobile traveling in the north bound lane. Redding was instantly killed. Tucker has no recollection of the events immediately preceding the accident. The evidence showed that although the decedent was at the wheel when the car left Picard's, at the time of the accident Tucker was driving and the decedent was in the passenger seat. It is not disputed that Picard was the registered owner of this vehicle.

Redding's administrator sued Tucker and Picard in Rhode Island Superior Court. The jury returned verdicts for the plaintiff. On appeal, the Supreme Court of Rhode Island reversed and remanded the case against Picard for a new trial. Redding v. Picard Motor Sales, Inc., R.I., 229 A.2d 762 (1967). The administrator, foregoing the state courts, brought the instant diversity suit. The jury found for the defendant and the trial court denied plaintiff's motion for a new trial. Plaintiff appeals.

The case against Picard in both suits was predicated on R.I.Gen.Laws 31–33–6, 31–33–7 (1956), as amended.[1] Under this statute when a motor vehicle is operated on a public highway with the consent of its owner, in the event of an accident, the driver is deemed to be the owner's agent and the fact that the car is registered in the owner's name is prima facie evidence of consent. The stat-

---

[1] "31–33–6. *Owner's liability for acts of others.*—Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, or lessee, or bailee, thereof, expressed or implied, the driver thereof, if other than such owner, or lessee, or bailee, shall in case of accident be deemed to be the agent of the owner, or lessee, or bailee, of such motor vehicle *unless such driver shall* have furnished proof of financial responsibility in the amount set forth in chapter [32 of this title], prior to such accident; and for the purposes of this section the term 'owner' shall include any person, firm, copartnership, association or corporation having the lawful possession or control of a motor vehicle under a written sale agreement."

"31–33–7. *Prima facie evidence of consent of owner.*—Evidence that at the time of such accident or collision the motor vehicle was registered in the name of the defendant shall be prima facie evidence that it was being operated with the consent of said defendant, and absence of such consent shall be an affirmative defense to be set up in the answer and proved by the defendant."

ute provides, however, that absence of consent is an affirmative defense. The Supreme Court of Rhode Island has made it clear that bailments are beyond the purview of this statute. Goulet v. Coca-Cola Bottling Co. of Rhode Island, 83 R.I. 310, 116 A.2d 178 (1955); Gallo v. American Egg Co., 76 R.I. 450, 72 A. 2d 166 (1950); Ford v. Dorcus, 54 R.I. 1, 168 A. 814 (1933).

Since the defendant properly pleaded bailment as an affirmative defense, the critical issue in this case is whether defendant's sales manager merely consented to the operation of the car or whether the parties intended to be bound by a bailment contract. If the relationship is the former, under the statute Picard would be responsible for the negligence of his imputed agent, Tucker. If on the other hand, the relationship was one of bailment, Picard as bailor is not responsible for the negligent act of his bailee's agent.

■ Plaintiff's first argument is that the district court committed reversible error in its instruction on bailment. In essence, the court charged the jury that if the decedent's purpose in driving the car was to try it out with a view to purchasing it, then the transaction was a bailment as a matter of law. Plaintiff contends that whether a contract of bailment exists is always a question of fact for the jury.

The latest pronouncement by the Supreme Court of Rhode Island on this issue may be found in Redding v. Picard Motor Sales, Inc., supra. The question before the court was whether to reverse the trial judge's denial of defendant Picard's motion for new trial on the ground that the verdict was against the weight of the evidence. In setting forth the test to be applied on review, the Rhode Island Supreme Court noted that the trial judge, as had the jury, inferred from the evidence that the relationship between the parties was one of agency. The court pointed out that although the mere existence of contrary inferences

would not justify reversal, if those inferences substantially negated the probative force of the inference selected by the trial judge, a new trial must be ordered. See Labbe v. Hill Brothers, Inc., 97 R.I. 269, 197 A.2d 305 (1964). After setting forth the direct evidence tending to establish that the decedent was a prospective purchaser, the court said:

"It is true that Long [Picard's sales manager] did consent to such operation by Redding, but in all the circumstances it is clear that the consent was predicated upon the fact that Redding was interested in the purchase of the car and that it was delivered to him for the purpose of testing it to make a determination to that effect. Thus considered, the inference that a transaction of bailment was intended by delivery of the car to Redding possesses a high degree of probability and, in our opinion, is the natural and plausible conclusion to reach therefrom. It is our further opinion that the probability thus inhering in an inference of bailment negatives the reasonableness of the inference drawn from the same evidence by the trial justice. In the circumstances we are compelled to conclude that she misconceived the thrust of the evidence and the weight thereof and a new trial must be ordered." Redding, supra, 229 A.2d at 766.

The practical effect of this ruling is that if the decedent drove the car with the intention of testing it to help him decide whether or not to buy, no inference but that of bailment can be drawn. In the instant case the jury found that the decedent had such an intention. We think it plain that having made this determination, under the Rhode Island Supreme Court's opinion in Redding the jury would not have been free to draw an inference of agency, and for that reason the trial court's instruction that this would be a bailment as a matter of law was proper.

■ Plaintiff next argues that "there is no evidence in this record that the decedent intended to purchase the 1961

MGA and not the 1954 MGTF automobile which he had driven twice previously." He asserts that the evidence shows rather that the decedent was merely in the process of comparing the two automobiles. From this he concludes that there was no factual basis for the jury's verdict. We think this position is untenable.

There is no mystery about what constitutes a bailment. In Emond v. Fallon, 56 R.I. 419, 424, 186 A. 15, 18 (1936), the court defined this relationship as follows: "[A] bailment is a delivery of a thing in trust for some specific object or purpose, and upon a contract, express or implied, to conform to the object or purpose of the trust." The "object or purpose" in the instant case was to determine whether the automobile in question was suitable for decedent's needs. It need not be shown, as plaintiff apparently believes, that the decedent had already made up his mind to buy the 1961 car. It is sufficient that his purpose in taking it out was to aid him in reaching a decision. We think plaintiff's argument that decedent drove the car for purposes of comparison strengthens rather than weakens the supposition that he was contemplating a purchase. The evidence shows that the decedent twice visited Picard's lot and on both occasions showed an interest in the same two cars. According to the testimony of defendant's sales manager, decedent told him he wanted to buy a car and on April 13 showed "some interest in some particular automobile." Similarly, Tucker testified that decedent wanted to buy a sports car. Some time after the first visit to Picard's lot, the sales manager telephoned the decedent to see if he was still interested in the cars. Decedent promised to come in shortly to try them out again. Within a few days he did so and road tested the same two cars. In our opinion the jury was justified in inferring from the evidence that when decedent took the 1961 MGA out he was a prospective purchaser.

■ Plaintiff contends further that the trial court committed prejudicial error by not granting his requested charges numbered 15, 16 and 17.[2] The foundation for this claim of error is plaintiff's assertion that its complaint is based on alternative theories, first, that Tucker was Picard's agent, and second, that Picard negligently maintained or inspected the vehicle. The pertinent paragraphs of the complaint are set forth in the margin.[3] We are satisfied that plaintiff did not assert a claim against defendant for negligent maintenance or inspection. The closest he

2. "15. The plaintiff requests the court to charge the jury on the inference of negligence concept. Coia v. Eastern Concrete Products, [Co.] 85 R.I. 128, [127 A. 2d 858] ; Eaton Realty [Co.] v. Petroleum Heat and Power, [Co.] 77 R.I. 345, 75 A.2d 178].

"16. If the defendant permitted the automobile in question on the highway when he knew or in the exercise of reasonable care should have known that said vehicle was defective, and if as a proximate result of said defect the decedent was killed, the defendant is liable for such death whether you find there was a bailment or an agency. Collette v. Page, 44 R.I. 26 [114 A. 136, 18 A.L.R. 74].

"17. As the owner of the 1961 MGA in question, it was the duty of the defendant to exercise reasonable care in the maintenance and inspection of said vehicle and if the defendant failed to reasonably inspect said vehicle or negligently inspected said vehicle so that as a result thereof the death of the plaintiff's decedent ensued, you may find the defendant negligent. Buszter [Buszta] v. Souther, 232 A.2d 396 (R.I.1967)."

3. "FOURTH: It became and was the duty of the defendant to use due care in the operation, maintenance, management and control of its said motor vehicle.

"FIFTH: Notwithstanding its said duty, and in violation of the same, the defendant, its agent and servant, so negligently operated its said motor vehicle that the same crossed the highway and collided with a second vehicle.

"SIXTH: As a direct and proximate result of the negligence of the defendant, as aforesaid, said Richard W. Redding sustained severe injuries and his death thereupon ensued, all on said April 13, 1962. * * *"

came to this was in paragraph 4 where he alleged a duty on Picard to use due care in the operation, maintenance, management and control of the car. Nowhere does he allege a breach of that duty. By reading paragraphs 4, 5, and 6 of the complaint in sequence, one discovers that plaintiff's allegation of negligence is confined to operation of the vehicle.

■ Finally, we come to the allegations that the district court committed reversible error in certain of its evidentiary rulings. First, plaintiff argues that four questions were improperly stricken. Although the court immediately thereafter allowed the questions, plaintiff claims that prejudice resulted and under Pescosolido v. Crugnale, 93 R.I. 82, 171 A.2d 443 (1961), a new trial should be granted. In *Pescosolido* the excluded testimony went to the essence of plaintiff's case and his failure to prevail could be explained only if the exclusion of the questions was prejudicial. In the instant case the excluded questions were of lesser importance. Moreover, here the error, if any, was corrected immediately whereas in *Pescosolido* the court did not reverse itself until the next day. We consider the point frivolous.

■ Plaintiff also contends that the trial court improperly rejected his witness, one Adams, as an expert on disc brakes. By his own admission Adams was not an expert on automobile braking systems and had worked on the type of car in question only once. "Whether a witness is qualified to express an expert opinion is a matter left to the sound discretion of the trial judge. In the absence of clear error, as a matter of law, the trial judge's decision will not be reversed." A. Belanger & Sons, Inc. v. United States for Use and Benefit of National United States Radiator Corp., 275 F.2d 372 (1st Cir. 1960). We see no error.

We have considered the other issues raised on appeal and find them to be without merit.

Affirmed.