MARGARET SMITH *vs.* JOHN C. GREEN & another.

Middlesex.   March 4, 1970. — July 2, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Landlord and Tenant,* Letting of defective premises, Landlord's liability
    to tenant or one having his rights, Step.   *Evidence,* Admitted without
    objection.

At the trial of an action against a landlord and his agent for injuries sus-
    tained by the plaintiff in a fall on steps in the control of the defendants,
    inculpatory statements by the agent to the plaintiff on the morning
    after the accident, introduced through the plaintiff's testimony on
    direct examination without objection by either defendant, was ad-
    missible against both defendants for all purposes.   [79]
Evidence in an action against a landlord and his agent that before the
    plaintiff's tenancy began the agent knew that "weatherbeaten,
    weatherworn" rear steps in the control of the defendants were de-
    fective and needed repairs and intended to repair them but negli-
    gently failed to do so and failed to warn the plaintiff of their defective
    condition, and that such condition was not noticeable to the plaintiff,
    warranted a finding that the defendants were liable to her for injuries
    sustained in a fall shortly after her tenancy began when she stepped on
    the wood tread of a step, it gave way and a portion of its nosing broke
    off.   [80]

TORT.   Writ in the Superior Court dated November 17,
1964.

The action was tried before *Barron, J.*

*Brian J. Moran* for the defendants.

*Walter E. Palmer* (*Laurence F. Simcock* with him) for the
plaintiff.

QUIRICO, J.   This is an action of tort to recover for personal injuries sustained by the plaintiff by reason of the alleged negligence of the defendants John C. Green (Green) and his son John C. Green, Jr. (Green Jr.).   The case is before us on the defendants' exceptions to the denial of their motion for directed verdicts in their favor on counts 2 and 4 of the plaintiff's declaration.[1]   The jury returned a verdict for the plaintiff on each count.

Count 2 against Green alleges in part that the plaintiff "while she was lawfully and properly upon the premises of the defendant as a tenant of said defendant, . . . was caused to be thrown down said defendant's stairway and injured due to the negligence of the defendant in that said defendant permitted said stairway to fall into a state of disrepair and decay and suffered to exist thereon a dangerous and defective condition for a long period of time."   Count 4 makes the same allegations against Green Jr.

The defendants' motion for directed verdicts raises the issue whether the evidence viewed in the light most favorable to the plaintiff would support her cause of action. *Kelly* v. *Railway Exp. Agency, Inc.* 315 Mass. 301, 302. *Mazzaferro* v. *Dupuis*, 321 Mass. 718, 719.   *Howes* v. *Kelman*, 326 Mass. 696, 697.   If upon any reasonable view of the evidence there is found any combination of facts from which a rational inference may be drawn in favor of the plaintiff, the case was properly submitted to the jury.

We summarize the evidence most favorable to the plaintiff.   Green and his wife occupied one half of a double house at 6–8 Sidney Street in Watertown.   At the outset of the trial the parties stipulated in open court "that the premises in question were under the control of the defendants, both defendants, and that the steps were under the control of the defendants."   Green Jr. was the owner of the property, but he did not live there.   He was outside the Commonwealth at all times material to this case.   Green was at all times responsible for renting the half of the house

---

[1] Counts 1 and 3 for the defendants' alleged breach of an agreement to make repairs were waived in open court at the time of trial.

which he did not occupy, collecting rents, paying bills and maintaining the premises, and "everything that goes in connection with operating a house."

As the result of an advertisement in a "paper" the plaintiff's husband (Smith) went to the Green apartment on July 10, 1963, to discuss renting the other half of the house and he examined it. Green told Smith that "the place was under complete renovations with repairs also to both rear and front steps." Smith then rented the vacant half of the house for $115 a month starting August 1, 1963. Smith who was forty-four years of age had been a carpenter all of his adult life. Green was a house painter. During early August there were ladders up against the house all around the rented apartment.

The Smiths moved into the apartment on August 10. Their furniture was moved in through the front door because it was larger than the rear door, and it was more convenient for the purpose. The plaintiff had used the rear door and steps of the apartment about five or six times prior to August 27, 1963, when she was injured. On the latter date the plaintiff and her husband returned from shopping about 8:15 P.M. and drove their car onto the driveway to the rear steps of their apartment. She started up the rear steps carrying in each hand a glass bottle containing one-half gallon of milk. The first or lowest step was made of concrete, and the next step was made of wood. When she stepped on the wood tread it gave way and a portion of the front or nosing of the step broke off. This portion measured about eighteen inches in length and from one-half inch to two inches in width. The plaintiff fell and struck her face against the edge of the platform and steps, injuring her face, throat, nose, eyes, head and teeth.

When the Smiths rented the apartment, the rear steps were "weatherbeaten, weatherworn." They looked the same on the day of the plaintiff's injuries as they did when she first saw them. The morning after the accident Smith looked at the broken step and he testified that it was "aged and decaying." There was no roof over the steps.

The morning after the accident Green visited the plaintiff who was confined to her bed. He told her that he was sorry that the accident had happened and he told her several times that he was "neligent" (*sic*) in not repairing the steps. Green's statements were introduced through the testimony of the plaintiff on direct examination. There was no objection to the testimony, nor motion to strike it out, nor motion to limit it to Green by or on behalf of either defendant. The defendants' brief raises no question about the admissibility of this evidence or about its applicability to both defendants. Neither has any question been raised about the authority of Green to make any admission on behalf of his son after the accident happened. *Parsons* v. *Dwightstate Co.* 301 Mass. 324, 327. *Barrett* v. *Wood Realty Inc.* 334 Mass. 370, 373–374. The evidence is thus in the case against both defendants for all purposes. *Produce Exch. Trust Co.* v. *Bieberbach,* 176 Mass. 577, 581. *Rosenston* v. *Bickford Shoes, Inc.* 340 Mass. 769, 772–773, and cases cited. *Thompson* v. *Beliauskas,* 341 Mass. 95, 97.

The general rule concerning conditions existing at the time of the letting is that in the absence of an express warranty or of deceit by the landlord, a tenant takes premises as he finds them and assumes the risk of their quality. A qualification of this general rule is that if the landlord knows of a hidden defect in the premises and the tenant is ignorant thereof, then the landlord has the duty to give notice of the defect to the tenant, and if he fails to do so he may be liable in damages to a tenant who is injured by the hidden defect. *Stumpf* v. *Leland,* 242 Mass. 168, 171. See *Bowe* v. *Hunking,* 135 Mass. 380, 384; *Cowen* v. *Sunderland,* 145 Mass. 363, 364–365; *Charity* v. *Yates,* 354 Mass. 275, 277. As to what constitutes a hidden defect it has been held that "it is not enough that the landlord knows of the source of danger, unless also he knows, or common experience shows, that it is dangerous. He is bound at his peril to know the teachings of common experience, but he is not bound to foresee results of which common experience would not warn him, and which only a specialist would apprehend." *Cutter* v. *Hamlen,* 147

Mass. 471, 474–475. *Martin* v. *Richards*, 155 Mass. 381, 382. *Stumpf* v. *Leland, supra*, at pp. 173–174. The rule of liability for hidden defects applies alike to premises let exclusively to a tenant and to premises used in common by several tenants but under the control of the landlord. *O'Malley* v. *Twenty-Five Associates*, 178 Mass. 555, 558. We consider the latter situation to exist here since the parties stipulated that the steps on which the plaintiff was injured were under the control of both defendants.

We hold that the evidence in this case was sufficient, if believed, to warrant the jury in returning verdicts for the plaintiff on counts 2 and 4 on the basis of the law relating to hidden defects. The jury could find from Green's statements to Smith before the letting, coupled with his admission to the plaintiff the day following her injury, that he knew that the steps were defective, that they needed repairs, that he intended to repair them, but that he negligently failed to repair them, that the defect was not noticeable to the plaintiff or her husband, that Green did not warn them of it, and that the plaintiff was injured in consequence thereof. While Green's admission of negligence did not require or compel the return of verdicts for the plaintiff, it had definite probative value. *Zandan* v. *Radner*, 242 Mass. 503, 505. *Tully* v. *Mandell*, 269 Mass. 307, 309. *Hartson* v. *Winship*, 326 Mass. 380, 383. The sole evidence that Green made the admission is contained in the testimony of the plaintiff. Green testified that he did not make, and did not recall making the admission attributed to him. It was the function of the jury to decide whether to believe the testimony that Green made the admission, and what weight to give the testimony if believed.

There was no error in the denial of the defendants' motion for directed verdicts in their favor on counts 2 and 4.

*Exceptions overruled.*