**Edna Bonfilio CARLSON, Administratrix of the Estate of John D. Bonfilio, Plaintiff-Appellant,**

v.

**AMERICAN SAFETY EQUIPMENT CORPORATION, Defendant-Appellee.**

**No. 75–1240.**

United States Court of Appeals, First Circuit.

Argued Nov. 4, 1975.

Decided Jan. 8, 1976.

David B. Kaplan, Boston, Mass., with whom Joseph G. Abromovitz and Kaplan, Latti & Flannery, Boston, Mass., were on brief, for plaintiff-appellant.

Francis X. Kiley, Boston, Mass., with whom Badger, Sullivan, Kelley & Cole, Boston, Mass., were on brief, for defendant-appellee.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Plaintiff commenced wrongful death and survival actions to recover damages arising out of the death of her son, John D. Bonfilio, on April 29, 1972, as a result of a head injury sustained the day before while he was driving a motorcycle that collided with a car at an intersection in Lexington, Massachusetts. Plaintiff is the administratrix of decedent's estate. Defendant is the manufacturer of the protective helmet which decedent was wearing prior to the collision. At the close of all the evidence on the issue of liability, the district court directed a verdict for defendant, and plaintiff appeals.

■ We examine the facts in the light most favorable to plaintiff, but without neglecting the uncontradicted evidence introduced by defendant. *Molinar v. Western Electric Co.*, 525 F.2d 521, at 523 (1st Cir. 1975); *see Pence v. United States*, 316 U.S. 332, 338–40, 62 S.Ct. 1080, 86 L.Ed. 1510 (1942); *Dehydrating Process Co. v. A. O. Smith Corp.*, 292 F.2d 653, 656 n. 6 (1st Cir.), *cert. denied*, 368 U.S. 931, 82 S.Ct. 368, 7 L.Ed.2d 194 (1951). Immediately prior to the accident decedent was observed wearing a helmet. Upon impact with the car, he and his passenger, Buzzy Meeks, were thrown from the motorcycle, and "seemed to fly through the air," landing in the bushes on the other side of the street. Meeks was not seriously injured. Decedent was observed lying on his back without a helmet on his head. (The helmet was found approximately 20 feet from his body.) He was rushed to the hospital and died the following day as the result of a massive cerebral contusion.

The helmet on which dispute centers was purchased from Honda of Boston in February, 1968 by Stephen Bonfilio, decedent's brother. Stephen took the helmet home in its box. He began using it that spring and used it several times a week until August, 1968 when he left it in a closet at the house of his mother (plaintiff). He did not use the helmet again until the spring of 1969 after which he sold his motorcycle and stored the helmet in the same closet. The last time Stephen saw the helmet prior to the accident was in the summer of 1971. It was not put to use again until April, 1972, several weeks prior to the accident, when decedent purchased a motorcycle and began using the helmet.

The helmet's "fastening device" involves two straps. The inner strap is made of a leatherette material and consists of two pieces, one attached to each side of the helmet by rivets and then joined in the center with three snap fastenings. The outer strap is made of two pieces of nylon fabric that can be joined at one side with metal buckles. Plaintiff's expert, Dyer E. Carroll, testified that when both the inner and outer straps were fastened they lay over and rubbed against one another and that this rubbing had caused "some wear and some slight fraying" of the outer fabric strap, and "some wear" of the inner strap particularly at the point where the metal buckles of the outer strap overlapped it. When the helmet was found after the accident the outer strap was not fastened and the inner strap was broken. Decedent's brother who had purchased the helmet, testified while examining it that the inner strap was in the same worn condition it had been when he had last seen the helmet in 1971 except at that time the strap "wasn't broken." He further testified that the foam rubber "crown pad" had been removed since his last use of the helmet and that there was an indentation and a "bubble" on the helmet's edging, as well as several marks on the exterior, which previously had not been there.

In her claim plaintiff stresses the condition of the straps when the helmet was found after the accident and the fact that decedent was observed wearing the helmet immediately prior to impact. Plaintiff contends that decedent had only the inner strap affixed at the moment of impact and that because of wear

caused by the rubbing of the outer strap and its buckle on the inner strap, the latter parted on impact allowing the helmet to come off decedent's head, leaving him unprotected. The essence of plaintiff's claim is that this reconstructed sequence of events was the proximate cause of decedent's death and was the result of negligent design of the helmet's "retention system" by defendant. Alternatively, plaintiff urges that defendant was negligent in failing to include a warning with the helmet to the effect that it was necessary to use both straps in order for the product to be safe.

In directing a verdict against plaintiff the district court emphasized there was a critical gap in plaintiff's theory of the cause of the accident, viz. there was no showing that the inner strap was intact the morning of the accident. The court ruled that there was "no evidence before the jury on the basis of which they could find the condition of the leather [inner] strap on the day before the accident or any reasonable time shortly before it. The entire presentation by the plaintiff is keyed to a gratuitous assumption that the strap was in place and snapped by the [decedent] using it on the day of the accident." The district court also held there was "a failure of proof of the standard of care in the area of . . . design."

■■■ Plaintiff claims that although there is no direct evidence of the condition of the inner strap, or of whether it was fastened prior to the accident, she is entitled to a positive inference on this question since the evidence must be viewed in the light most favorable to her. However, this claim must fail. There are two views as to what standard should govern such inferences. Under one view a plaintiff's entitlement to have inferences drawn in his favor on a motion for a directed verdict only extends to inferences where the evidence already offered makes the existence of the fact to be inferred more probable than its nonexistence. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2528 (1971). Under the other view,

where two conflicting inferences are equally probable, a plaintiff is entitled to have the question submitted to the jury. *Wratchford v. S. J. Groves & Sons, Co.*, 405 F.2d 1061, 1067 (4th Cir. 1969). In the present case, however, where the four year old helmet had last been seen by decedent's brother more than six months earlier, we do not find the inference to meet either standard. A plaintiff is not entitled to unreasonable inferences which rest on speculation and conjecture. *Schneider v. Chrysler Motors Corp.*, 401 F.2d 549, 555 (8th Cir. 1968); *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir.), *cert. denied*, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958). Here there was no evidence of whether the strap was fastened nor any evidence of the condition of the strap at any time reasonably close to the time of the accident.

Even if we were convinced that the inner strap was intact and fastened on the morning of the accident, there would remain the question whether, despite the absence of direct evidence that the design of the helmet's retaining straps was negligent, the circumstances of the accident are such that it could only have occurred through negligence. While Massachusetts does permit the trier of fact "to draw from the occurrence itself of an unusual event the conclusion that it would not have happened unless the defendant had been negligent," *Evangelio v. Metropolitan Bottling Co.*, 339 Mass. 177, 180, 158 N.E.2d 342, 345 (1959); *see LeBlanc v. Ford Motor Co.*, 346 Mass. 225, 191 N.E.2d 301 (1963), nevertheless a plaintiff must prove more than the fact of the accident. "Where, as here, the accident occurs after the defendant has surrendered control of the instrumentality involved, it is incumbent upon the plaintiff to show that the instrumentality had not been improperly handled by [decedent] or by intermediate handlers." *Coyne v. John S. Tilly Co., Inc.*, Mass.Adv.Sh. (1975) 2141, 2149–50, 331 N.E.2d 541, 546 (1975), quoting *Evangelio v. Metropolitan Bottling Co., supra*, 339 Mass. at 183, 158 N.E.2d 342.

See Rafferty v. Hull Brewing Co., 350 Mass. 359, 363, 215 N.E.2d 85, 87 (1966). Plaintiff has here failed to meet that burden. While there is some evidence as to Honda of Boston's handling of the helmet after receiving it from the manufacturer, and evidence of the helmet's use by decedent's brother, there is no evidence of how the helmet was handled after decedent's brother ceased using it in the summer of 1971 more than six months prior to the accident. And there is evidence that part of the helmet's interior padding was removed and that other marks were present.

 Plaintiff also contends that the defendant had a duty to warn of the necessity of using both straps because without such a warning the helmet was dangerous to users. However, this claim cannot avail. The duty to warn extends to concealed, nonobvious dangers. See Jamieson v. Woodward & Lothrop, 101 U.S.App.D.C. 32, 247 F.2d 23, 26–27, cert. denied, 355 U.S. 855, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957). Further, liability is usually imposed under this doctrine in circumstances where there is evidence that the defendant manufacturer had actual knowledge of prior injuries to consumers, or where there is expert testimony showing a hidden defect or concealed danger that was known, or should have been known to the defendant manufacturer. See, e. g., Filler v. Rayex Corp., 435 F.2d 336, 338 (7th Cir. 1970); Wright v. Carter Products, 244 F.2d 53, 56 (2d Cir. 1957); see also Ritter v. Narragansett Electric Co., 109 R.I. 176, 184–85, 283 A.2d 255, 259–60 (1971). In the present case, plaintiff introduced no evidence that defendant knew of prior injuries to users of similar helmets. And

plaintiff failed to show evidence of a hidden defect or danger inherent in the helmet's design.\* Accordingly, the district court correctly directed a verdict in favor of the defendant.

*Affirmed.*

---

\* The district court ruled that plaintiff's expert Carroll was "unqualified in the field of design of safety helmets . . .," and unqualified to establish a standard of care regarding notice and warning to users by a manufacturer. The witness had no educational background or employment history in the design of helmets or of any other product, and testified on the basis of visual and photographic examination of the helmet. "Whether a witness is qualified to express an expert opinion is a matter left to the sound discretion of the trial judge. In the absence of clear error, as a matter of law, the trial judge's discretion will not be reversed." A. Belanger & Sons, Inc. v. United States, for Use and Benefit of National U. S. Radiator Corp., 275 F.2d 372, 376 (1st Cir. 1960); accord, Taylor v. C. I. R., 445 F.2d 455, 459 (1st Cir. 1971); Redding v. Picard Motor Sales, Inc., 403 F.2d 788, 792 (1st Cir. 1968). Given the circumstances here there was no error in the district court's ruling.