SHELBY JORDAN vs. GEORGE GODDARD.

Norfolk.   October 19, 1982. — December 1, 1982.

Present: PERRETTA, CUTTER, & KASS, JJ.

*Landlord and Tenant*, Repair, Landlord's liability to tenant or one having his rights.  *Negligence*, One owning or controlling real estate, Repair.

In an action by a tenant against his landlord as a result of a fire which originated at or near a gas space heater placed in an area used as a closet, evidence was sufficient to warrant the jury in finding that the fire was caused by the landlord's negligence.  [727]

In an action by a tenant against a landlord for personal injuries and property damage resulting from a fire, there was no error in the judge's charge to the jury in view of recent judicial decisions on a landlord's duty of care, especially *Young* v. *Garwacki,* 380 Mass. 162 (1980), even though the fire occurred before the decision of the Supreme Judicial Court in that case and the charge was inadequate to bring to the jury's attention various legal principles on the liability of landlords to tenants under older authorities.  [727-729]

A tenant's action in rushing into a room where a fire was burning, rather than using an external flight of stairs leading from a window in his apartment to the ground, did not establish, as a matter of law, that the tenant's action was the cause of his injuries.  [731]

In a negligence action by a tenant against his landlord, the judge's instruction to the jury on the standard of care owed by the tenant to the landlord was adequate in view of the evidence and was consistent with the revised principles of liability announced in *Young* v. *Garwacki,* 380 Mass. 162 (1980).  [731-736]

CIVIL ACTION commenced in the Superior Court on June 25, 1975.

The case was tried before *Fine,* J.

*John J. Thornton* for the defendant.

*Daniel H. Kelleher* (*John J. Mackin* with him) for the plaintiff.

CUTTER, J.   At trial there was conflicting testimony on various issues.  The evidence, however, would have permitted the jury to find the following to be the facts.

About September 24, 1974, Jordan, a professional foot-
ball player, moved into an apartment in Mansfield rented to
him by Goddard, who owned the building. There was no
written lease, but it was agreed that the rent was to be $150
a month, "heat, electricity, everything furnished." When
the agreement was made, Goddard showed Jordan an area
about four and a half to five feet wide, which Goddard said
had "been used as a closet before." This contained "a
clothes rack [essentially a single fixed horizontal pipe or pole
about two inches in diameter] extending between two [side]
walls." Directly under the left side of the clothes rack (look-
ing from outside the area) was a gas space heater.

During October, 1974, Jordan used the heater twice at
intervals of "[a]bout ten days." On each occasion the heat-
er made "unusual popping noises" and caused the room to
get hot enough to awaken Jordan. He had trouble manipu-
lating the buttons so as to turn off the heater. According to
his testimony, after each such incident, he spoke to God-
dard about the malfunction of the heater. Goddard replied
on one occasion, "I meant to tell you; there's a problem
with the heater," and promised to "take a look at it." On
the other occasion Goddard said, "I meant to fix it [the
heater], but I've . . . been so . . . busy I didn't get around to
it . . . [b]ut I'll fix it today for sure." Jordan offered the key
to his apartment to Goddard, who replied that he had his
own key and could "get in."

Jordan is a very large man and used large clothing which
would have taken up the whole rack but, because of the heat-
er, he used only about three quarters of the rack. He did not
use the portion of the rack "which was closest to the heater."

On October 28, 1974, Jordan returned to his apartment
from a fraternity gathering about 3:30 A.M. There he had
taken nothing to drink, and he did not smoke. He hung up
his clothes with the nearest item of his clothing, a shirt, "no
less than a foot" from the heater.[1] He pushed in the "low

---

[1] Jordan testified that he had not placed any clothes on the space heater.
There was testimony from the deputy fire chief of Mansfield that Jordan

button" on that and went to bed. While it was still dark, he smelled smoke. The sitting room and kitchen area were "engulfed in flames." He "rushed . . . into the room where the flames were" and attempted to extinguish the flames with water. Then he wrapped himself in a blanket and, in great pain, rushed out and aroused the other occupants of the building. He was severely burned and was taken to a hospital. Jordan also lost tangible personal property in the fire.

Jordan testified that Goddard visited him in the hospital, and expressed the hope that the burns would not "ruin . . . [his] football career," and went on to say, "I'm sorry, I should have fixed that . . . heater . . . . I knew that thing was out of commission and I meant to fix it. . . . I know that . . . clothes" for a "man your size" were "too big for that area . . . I showed you." There also was testimony, largely from expert witnesses, that there was no indication of explosion in other parts of the gas lines of the apartment house; that the air vent of the heater was broken open and the heater's buttons, "pretty well melted," were out of line; that the front of the heater "had melted from heat"; that there "was a lot of charcoal . . . around the heater . . . and some sort of debris"; that the heat exchanger of the space heater was normal and had not been subject to any gas explosion; and that the deepest charcoal was near the heater, which indicated that the fire had started there.[2]

---

admitted to him or to the deputy fire chief's father that he had placed a jacket or other clothing on the heater when he arrived at home on the morning of the fire.

[2] Further testimony permitted the jury to find that there was a burnt residue of man-made material on the heater the day after the fire; and that "[p]artially burnt clothing" lay near the heater. This had fallen when the clothes rack over the heater "pulled out of the wall." There was expert testimony that, if the heater was functioning normally, with safety controls preventing the temperature of air leaving the heater from getting above 250° Fahrenheit, the heater would not be a fire hazard even with clothing draped over it. This testimony afforded the basis for a jury inference that, if the heater was the cause of the fire, it was not functioning properly.

A tenant who had occupied the apartment until August, 1974, testified that the space heater, installed in October, 1973 (to supplement the apartment's heat), "worked fine" for her but that, in the winter, she kept her clothing two feet away from the heater. Goddard conceded that he had bought the heater second-hand and did not know how old it was. The apartment otherwise was unheated except for "a radiator in the bathroom."

Jordan's complaint, filed on June 25, 1975, alleged that he was injured and lost personal property because of a fire upon the rented premises caused by Goddard's negligence. There was no allegation that Goddard had committed a breach of an implied covenant of habitability. Goddard by his answer denied any negligence, alleged that Jordan's negligence exceeded Goddard's, and, by way of counterclaim, asserted that Jordan "by his negligent conduct or omissions" caused the fire, thereby causing damage to Goddard's property.

At the close of Jordan's evidence and at the close of all the evidence, Goddard filed motions for a directed verdict which were denied. The case was submitted to the jury on special questions. To these, the jury answered (1) that Goddard was negligent; (2) that his negligence was a proximate cause of Jordan's injuries; (3) that Jordan was not "causally negligent;" (4) that the percentage of "causal negligence" attributable to Goddard was one hundred percent and to Jordan zero; (5) that Jordan sustained aggregate damages of $56,000 for his personal injuries and property damages; and (6) that, in connection with Goddard's counterclaim, Jordan was not "causally negligent." Judgment was entered accordingly on March 31, 1981. Goddard's motions (in Jordan's action and upon Goddard's counterclaim) for judgment notwithstanding the verdict were denied on April 8, 1981, as were motions for a new trial. Goddard on his appeal asserts (a) that Jordan's case was based on speculation and conjecture about any defect in the space heater; (b) that the trial judge gave a jury charge which did not properly reflect a landlord's duty to tenants under principles of law

existing both before and after the decision of *Young* v. *Garwacki*, 380 Mass. 162 (1980); (c) that Jordan was barred from recovery because Jordan's failure to use the fire escape was the sole cause of his injuries; and (d) that the trial judge failed to instruct adequately about principles of law governing Jordan's liability on Goddard's counterclaim.

1. Goddard's motions for a directed verdict and for judgment notwithstanding the verdict were properly denied. On the evidence the jury (from Goddard's undertaking to furnish heat) could infer (a) that he had assumed the duty to repair and maintain the heater, the only adequate source of heat for the apartment, and (b) that Goddard in effect had retained control of the heater. It could be found that the fire started at or near the heater and was a consequence of Goddard's negligence in maintaining it. The matters just mentioned could be considered together with the testimony (received without objection) of Goddard's conversations with Jordan both before and after the fire (1) admitting his failure to warn Jordan of the defects of the heater (see *Smith* v. *Green*, 358 Mass. 76, 79 [1970]; see also *Pfeiffer* v. *Salas*, 360 Mass. 93, 99-100 [1971]); (2) in effect stating that he had not performed his oral undertaking to put the heater in order; and (3) conceding that the area where the heater stood was too small for the clothes of a large man like Jordan. Taking all the circumstances disclosed by the evidence in their aspect most favorable to Jordan, the jury were warranted in concluding that the fire was caused by Goddard's negligence. See *Zezuski* v. *Jenny Mfg. Co.*, 363 Mass. 324, 327-331 (1973). They could find that the area near the heater constituted an unreasonable and substantial fire hazard. We think that, even under the principles of Massachusetts law treated as essentially abandoned in *Young* v. *Garwacki*, 380 Mass. at 165-168, there was basis in the evidence for holding Goddard subject to liability to Jordan for negligence.

2. Goddard contends that, at least as to the 1974 injuries discussed in the present case, the 1980 *Garwacki* decision, 380 Mass. 162 (1980), is not controlling. Alternatively, he

contends that the *Garwacki* decision applies only to guests of tenants and thus is inapposite in this case. By somewhat repetitive requests for rulings, Goddard asked the trial judge to instruct in substance that he as landlord could not be held liable for negligence in causing Jordan's injuries (a) unless Jordan established that Goddard had agreed to make repairs to correct a defective condition and had made them negligently, or (b) unless Jordan had not been warned of hidden defects, existing at the time of the letting, of which Goddard was aware. The trial judge instead charged in substance that the mere occurrence of the fire was not by itself evidence of Goddard's negligence but that the latter's negligence must be proved by a fair preponderance of the evidence. She then instructed also that "a landlord is under an implied duty to exercise reasonable care to maintain the rented premises in a reasonably safe condition" and "not to subject . . . tenants to an unreasonable risk of harm." She charged further that the jury were "to say on the basis of [all] the evidence . . . whether . . . Goddard violated this standard or whether he acted as a reasonable prudent person . . . under all . . . the . . . circumstances." They were told that they could give consideration (a) to the "condition of the heater" and to "whether it was defective . . . at the time of the fire"; (b) to "what instructions were given or not given about the heater and about hanging clothing" near the heater and to what clothing was there; (c) to what, if anything, was said by Jordan and Goddard to each other about the heater; and (d) to "what access each party had to the heater." [3]

It is apparent that the trial judge by her charge did not give instructions of the type sought by Goddard, and re-

---

[3] The judge also instructed that, if the jury believed "that this heater was defective or that there was a dangerous condition in the apartment because of the heater, [and] that . . . Goddard knew or should have known of the danger, then he was under a duty to take whatever actions a reasonably prudent person would have taken and within a reasonable period of time. It is for you to say whether . . . Goddard lived up to that standard."

quired under the less recent cases. If the older authorities on the liability of landlords to their tenants are still controlling, the charge was inadequate to bring to the jury's attention various applicable legal principles, and it would be necessary to remand the case for a new trial with appropriate instructions.

Examination of the record shows that Goddard adequately preserved his rights to appellate review and that the trial judge was well aware of Goddard's objections to her charge and saved his rights. We must determine, therefore, whether the principles stated in the *Garwacki* case are now applicable to negligence claims by tenants against landlords. If those principles govern the present litigation, the charge was adequate under the *Garwacki* decision.

3. There have been very great changes in recent years in the liabilities of landlords of residential property, in part by judicial decisions and in part on the basis of statutes. All these have been reviewed recently. See the *Garwacki* case, 380 Mass. at 164-171. There is no occasion here to repeat the detailed analysis in that opinion. The progression of recent court decisions began with *Boston Housing Authy.* v. *Hemingway,* 363 Mass. 184 (1973), recognizing (at 199) an implied warranty of habitability with respect to leases of residential property. It has continued through a long succession of cases. See, e.g., *Mounsey* v. *Ellard,* 363 Mass. 693 (1973); *DiMarzo* v. *S. & P. Realty Corp.,* 364 Mass. 510, 514 (1974); *King* v. *G & M Realty Corp.,* 373 Mass. 658, 661-662 (1977); *Crowell* v. *McCaffrey,* 377 Mass. 443, 445-452 (1979); *Great Atl. & Pac. Tea Co.* v. *Yanofsky,* 380 Mass. 326, 329-332 (1980); Stavisky, Landlord and Tenant §§ 511-521, 1071-1080 (1977 & Supp. 1982); Nolan, Tort Law § 244 (1979 & Supp. 1982); Greaney, Developing Duties of a Landlord with Regard to Tenant Safety, 63 Mass. L. Rev. 61 (1978). See also *Berman & Sons* v. *Jefferson,* 379 Mass. 196, 202-205 (1979). Compare *Markarian* v. *Simonian,* 373 Mass. 669, 674-676 (1977), which may have been affected more recently also by the *Garwacki* case, at 164. Compare also for a discussion of the older cases, Hall,

Massachusetts Law of Landlord and Tenant §§ 199-212 (4th ed. 1949).

The *Garwacki* case (following its review of the older decisions) announces (at 166) that, "[a]fter seven years of reconsideration and reform, little remains of this obsolete machinery of the common law." The opinion (at 169) adopts for Massachusetts the language of the late Chief Justice Kenison in *Sargent* v. *Ross,* 113 N.H. 388, 397-398 (1973), that a "landlord must act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk." An intermediate appellate court must apply such a comprehensive decision of a court of higher authority (announcing a change in the common law and discussing the interpretation of recent statutes) in accordance with an honest appraisal of the extent and impact of the decision. We are of opinion that the reasoning and momentum shown in the *Garwacki* decision (and in the earlier recent decisions) well justified the perceptive trial judge in charging as she did. There was no error in her instructions on the basis of "familiar negligence analysis" and of "reasonableness" (see the *Garwacki* case, at 170).[4] We find nothing in the reasoning of the *Yanofsky* case, 380 Mass. at 329-332, leading to a different view. In view of the decision in *Bouchard* v. *DeGagne,* 368 Mass. 45, 47-50 (1975), the newer principles may be applied retroactively to all pending and viable cases. See also *Crowell* v. *McCaffrey, supra* at 446-447. General Laws c. 186, § 14, as amended by St. 1974, c. 192, § 1 (effective by § 5 as to rental arrangements made after July 1, 1974), of course also applied to this apartment rental.

---

[4] In the *Garwacki* case, 380 Mass. at 171 n.12, it is said, "In its *narrowest* application, our rule today governs only plaintiffs who are the tenant's guests" (emphasis added). We regard the use of the word "narrowest" as a significant suggestion (especially in view of the case references which appear later in the footnote) that a broader application of the rule of the *Garwacki* case is likely to follow when the Supreme Judicial Court has occasion to consider a landlord's liability to a tenant for the former's negligence.

4. Goddard contends that Jordan should be barred from recovery because he rushed into the room where the flames were, when he was awakened by the fire, rather than using an external flight of stairs leading from a window in his apartment to the ground. This is essentially an argument that Jordan caused the injury. The jury were given proper instructions on comparative negligence, a matter for the jury's determination. On Jordan's testimony, it reasonably could have been found that, in the confusion resulting from Jordan's sudden awakening and discovering the fire, he "just rushed into the room [where the fire was] without thinking initially" and then unsuccessfully tried to put the fire out with a bucket of water and nearly passed out from the smoke. Then he escaped as best he could and tried to warn other occupants of the building. The jury had before them an issue of fact for their decision. See G. L. c. 231, § 85, as appearing in St. 1973, c. 1123, § 1, effective January 1, 1974; *Brown* v. *Wong Gow Sue*, 354 Mass. 646, 650 (1968). They could have found that, in the emergency, Jordan's failure to use the external staircase was reasonable. See *Green* v. *Haverhill & Amesbury St. Ry.*, 193 Mass. 428, 430 (1907). Compare the situation considered in *Williams* v. *Fontes*, 383 Mass. 95 (1981).

5. Goddard contends that the trial judge did not give proper instructions to the jury on the standard of care owed to Goddard by Jordan. Despite proper objection by Goddard, the trial judge charged (1) that Jordan as tenant "was under a duty to exercise reasonable care not to subject the property of his landlord and other tenants to an unreasonable risk"; (2) that it was for the jury to say whether Jordan "was negligent in . . . his use of the premises," and whether any negligence on Jordan's part was a contributing cause of the fire; and (3) that the burden rested on Goddard to prove such negligence on Jordan's part and that it contributed to the fire. More specific instructions,[5] requested in God-

---

[5] The requested instructions were based upon the principles discussed in *Ross* v. *Broitman*, 338 Mass. 770, 772-773 (1959), and *Becker's Inc.* v. *Breyare*, 361 Mass. 117, 121-122 (1972).

dard's behalf, could not have been given because they presupposed the existence of facts concerning which the testimony was in conflict, e.g., whether Jordan had placed clothes on the space heater (see note 1, *supra*). See *Wadsworth* v. *Boston Gas Co.*, 352 Mass. 86, 93-94 (1967). In the light of the testimony concerning Jordan's and Goddard's access to the heater, and the arrangements for the tenancy and for heating the apartment, the charge (based on ordinary negligence principles) seems to us to have been adequate and consistent with the revised principles of liability announced in the *Garwacki* case (at 168-170).

The orders denying motions for a new trial and for judgment notwithstanding the verdict are affirmed. The judgment is affirmed.

*So ordered.*