**William D. McDONALD, Plaintiff, Appellee,**

v.

**FEDERAL LABORATORIES, INC., Defendant, Appellant.**

No. 83–1230.

United States Court of Appeals, First Circuit.

Argued Oct. 4, 1983.

Decided Jan. 3, 1984.

Stephen R. Kravetz, Foxboro, Mass., with whom Fine & Kravetz, and Howard Davis, Foxboro, Mass., were on brief, for defendant, appellant.

Richard J. Bennett, Boston, Mass., with whom Joseph P. Collins, Boston, Mass., was on brief, for plaintiff, appellee.

Before COFFIN, Circuit Judge, GIBSON,* Senior Circuit Judge, and BREYER, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Federal Laboratories Inc., the defendant in this breach of warranty and negligent design case, appeals a $789,650 jury verdict in favor of William McDonald claiming, *inter alia,* the amount of the verdict was excessive and thus the district court should have granted Federal's motion for a remittitur or a new trial. We affirm.

I.

The plaintiff McDonald, a 42 year old police officer, brought a breach of warranty and negligent design action for damages he sustained when a mace [1] cannister ("The Streamer"), manufactured by Federal, accidentally discharged while he was carrying it in a holster on his gun belt. The accident occurred at about 1:00 a.m. on July 9, 1979, while McDonald was answering a peace disturbance call. As McDonald exited the police car, the mace cannister banged against the car door, causing the mace contents to discharge. The mace penetrated through McDonald's police uniform, saturating his stomach, legs and groin area. McDonald's eyes and cheekbones were also burning. He immediately returned to the station to wash the exposed parts of his body. Though having a "funny feeling" in his pants or loin area, McDonald did not change his clothing because he believed that the mace could not have penetrated a heavy pair of police pants. He finished his duty tour at 8:00 a.m. on July 9, 1979, and went home.

Later in the day of July 9, 1979, McDonald began experiencing severe discomfort and blistering on his stomach, legs and groin area. He went to a local health center and received prescription medication from a dermatologist. Because of the sev-

---

* Of the Eighth Circuit, sitting by designation.

1. The term "mace" has been used by the parties and in the district court to generally connote a chemical compound prepared for use in aerosol containers, which has the effect of temporarily stunning its victims. Smith & Wesson Chemical Company, Inc., which is not involved in this litigation, has registered trademarks in the terms "Mace" and "Chemical Mace". Here we use the term "mace" only to describe the type of aerosol device manufactured by Federal Laboratories.

erity of the blistering, McDonald was unable to return to work until July 29, 1979. Upon his return, McDonald continued to apply medication and bandages to the inflamed areas, but, after a month, the pain and itching became unbearable and McDonald discontinued work on September 29, 1979. During the next few months, McDonald's family physician, Dr. Baskies, prescribed various skin medications which proved ineffective in controlling McDonald's skin problem. On December 13, 1979, Dr. Baskies referred McDonald to Dr. Richard Brown, a dermatologist who treated McDonald through March 22, 1980, when he returned to duty. By the time of his return to duty, McDonald's skin problem was somewhat under control, though he still experienced redness and itching on his stomach and legs.

While on duty on August 2, 1980, McDonald was again exposed to mace, triggering a recurrence of the severe blistering. As a result, McDonald became unable to return to police work and was involuntarily retired in December 1981.

At trial, during November 1982, Dr. Brown testified that he continued treating McDonald after his re-exposure to mace, prescribing cortisone tablets, myacin drugs, and various skin creams. Dr. Brown diagnosed McDonald's skin disorder as contact dermatitis, traceable to the initial exposure to mace, and subsequent eczematous eruptions with sensitization to many substances, including mace, gasoline, and various solvents (e.g., paint thinner and turpentine). McDonald's dermatitis was characterized by constant itching, open sores, infection, exacerbations, inflammation and blistering. Dr. Brown concluded that McDonald's skin condition rendered him incapable of performing police work or any other work involving possible exposure to substances to which he had become sensitized.

Dr. Brown's testimony essentially echoed the findings of Dr. Edmund Finnerty, a dermatologist who examined McDonald on behalf of the defendant on June 15, 1982. Dr. Finnerty, noting multiple areas of eczema and dermatitis over many parts of McDonald's body, concluded that McDonald had sensitization dermatitis, rendering him disabled.

The jury and trial judge also had the benefit of observing some of the affected areas of McDonald's body, including his abdomen and thighs. McDonald testified that his scrotum and penis were similarly affected by recurring episodes of dermatitis. The blistering was in a state of remission when he testified at trial, which was some twenty-seven months after his re-exposure to mace.

McDonald's wife also testified, rather forcefully yet without undue passion, that her husband's dermatitis had never cleared-up and was adversely affecting his mental and physical condition as well as his enjoyment of conjugal relations.

The evidence concerning Federal's product liability included the testimony of plaintiff's expert, Mr. Schofield, that Federal's Streamer was poorly designed because it: (1) did not contain a locking device; and (2) had insufficient clearance around the plunger causing it to bind when pressure was exerted on it. Presumably, a locking device or greater clearance around the plunger would have prevented the plunger from activating when the mace cannister struck the police car door. Schofield testified that when Federal manufactured the Streamer, the technology of putting a locking device on aerosol cannisters was available and inexpensive.

Schofield also testified about the leather holster in which the Streamer was carried. The holster, containing a Smith and Wesson label, was clearly identified as not being manufactured by Federal, though Federal manufactured a similar holster. Schofield testified that the soft base of the holster increased the likelihood that the Streamer, having no locking device, would discharge upon impact.

In rebutting Schofield's claim of engineering defects, Federal presented the expert testimony of Kenneth Blakely, a Federal engineer, and Edwin Kalat, a chemist with experience in the aerosol industry. The court did not permit Kalat to testify as

to the engineering aspects of the Streamer because he did not have the required skill, training and experience to qualify as an expert in that area.

The jury returned a total verdict of $929,-000 in favor of McDonald, which was reduced to $789,650 to give effect to a jury finding of 15% comparative negligence on McDonald's part. Federal filed a motion for a new trial and/or a remittitur, claiming the verdict was grossly excessive. The trial judge expressed some surprise at the size of the award, it being about twice what he would have awarded, but nevertheless concluded that the verdict was not grossly excessive in view of McDonald's pain, suffering, humiliation, embarrassment, and loss of vocational ambition and meaningful home life.

## II.

Federal's first and foremost argument is that the verdict size bears no reasonable relation to the injury sustained and should be remitted by this court. Federal points out that the only evidence on damages dealt with pain and suffering, McDonald's earnings at the time of retirement ($22,000 per year), and the nature and extent of his injury. There was no evidence of permanent disability sufficient to support a finding of diminished future earnings. Nor was there evidence as to McDonald's life expectancy or normal retirement. Also, the trial court purportedly invited the jury to speculate on McDonald's future lost earnings by failing to specify an appropriate present value discount rate. Federal alludes to various dermatitis cases in which smaller awards have been reduced as excessive. And, as an indication of excessiveness, Federal points to the trial judge's observation that the verdict was about twice as large as he would have awarded.

Our inquiry here is limited to determining whether the trial court abused its discretion in refusing to set aside the verdict as excessive. *See* 6 J. Moore, *Moore's Federal Practice,* ¶ 59.08(7) p. 59–193 (2nd ed. 1976); *see also Stafford v. Perini Corp.,* 475 F.2d 507, 512 (1st Cir.1973). Our guide for making this determination is whether the verdict was "grossly excessive", "inordinate", "shocking to the conscience of the court" or "so high that it would be a denial of justice to permit it to stand." *Grunenthal v. Long Island R.R. Co.,* 393 U.S. 156, 159, 159 n. 4, 89 S.Ct. 331, 333, 333 n. 4, 21 L.Ed.2d 309 (1968), *quoting, Dagnello v. Long R.R. Co.,* 289 F.2d 797, 802, 806 (2nd Cir.1961).[2] *See also Betancourt v. J.C. Penney Co., Inc.,* 554 F.2d 1206, 1207 (1st Cir. 1977). In applying this standard we "make a detailed appraisal of the evidence bearing on damages." *Grunenthal,* 393 U.S. at 159, 89 S.Ct. at 333. However, in doing so "we are constrained to view the evidence in the light most favorable to the plaintiff." *Betancourt,* 554 F.2d at 1207.

■ Viewing the evidence on damages in the light most favorable to McDonald, we do not regard the jury verdict as grossly excessive. Although there was no finding that McDonald was permanently disabled, it is clear that he was unable to do police work—his main vocational ambition—or any other work involving possible exposure to fumes or solvents. Indeed, McDonald's opportunities for work were severely restricted.

Beyond McDonald's prospective loss of future earnings, however, the jury had before it rather compelling evidence as to the grievous nature of the pain and suffering brought on by the dermatitis. Drs. Brown and Finnerty diagnoses, made nearly two years after McDonald's last exposure to

2. The following oft quoted statement from *Dagnello* cogently articulates the limited nature of the review:

Just as the trial judge is not called upon to say whether the amount is higher than he personally would have awarded, so are we appellate judges not to decide whether we would have set aside the verdict if we were presiding at the trial, but whether the amount is so high that it would be a denial of justice to permit it to stand. We must give the benefit of every doubt to the judgment of the trial judge; but surely there must be an upper limit, and whether that has been surpassed is not a question of fact to which reasonable men may differ, but a question of law.

289 F.2d at 806.

mace, established that the dermatitus was characterized by constant itching, open sores, infection, inflammation and blistering on his abdomen, inner thighs, scrotal area, arms, and ankles. The jury also observed some of the affected areas of McDonald's body, including his abdomen and thighs. McDonald testified that he has frequent outbreaks of infection and blistering, and that he is rarely, if ever, completely free from some form of physical pain. Mrs. McDonald's testimony amplified the nature and extent of the pain, suffering, humiliation and depression brought on by the recurring dermatitus. She testified that her husband suffered physically from the recurring blistering, and emotionally from the thought he could no longer pursue his life's vocational ambition. Also, Mr. McDonald's enjoyment of conjugal relations has been adversely affected, as he and his wife would sleep separately for weeks at a time. There was no evidence, medical or otherwise, that the dermatitus symptoms would abate at some point in the future.

■ From this evidence the jury could reasonably conclude that, apart from future lost earnings, McDonald has suffered, and will continue to suffer for an indeterminate time into the future, considerable physical pain, humiliation, and the loss of meaningful business, social and home life. Placing a value on human suffering is always a subjective enterprise, turning on the jury's sensibilities to the facts and circumstances presented in a particular case. *See Mitchell v. Evelyn C. Brown, Inc.,* 310 F.2d 420, 425 (1st Cir.1962). Though we, like the trial judge, may have awarded a lesser amount, we cannot say that the jury so overstepped

its bounds as to "shock the conscience" of this court.

■ We reject Federal's suggestion that the trial court committed reversible error in failing to specify a particular present value discount rate or in failing to set forth a formula for the jury to reduce to present value any damages awarded for future diminution of earning capacity.[3] The trial judge instructed the jury to reduce the award for future lost earnings to its present value, using a "reasonable rate of interest," —i.e., the interest McDonald would earn on the money if placed in a bank.[4] Thus, the concept of present value reduction was explained to the jury, if in a rather simplified form. Federal's claim that the court erred in failing to set forth a specific formula for computing present value comes too late, having not been raised in the trial court. Fed.R.Civ.P. 51; *see Brochu v. Ortho Pharmaceutical Corp.,* 642 F.2d 652, 663 (1st Cir.1981). And, the court's instruction to apply a "reasonable rate of interest" instead of a precise interest rate was attributable to the parties' own failure to provide probative evidence of an appropriate discount rate.

■ We also reject Federal's contention that the award must be overturned because the court instructed the jury to consider past and future medical expenses, where there was no distinct proof of the amount of medical expenses incurred or reasonably foreseeable. There was evidence that medical expenses had been incurred by McDonald and would continue to be incurred in the future. Federal's counsel had an opportunity to argue and prove to the jury that the medical expenses were miniscule

---

3. Federal makes no claim that the trial court erred in failing to give a present value instruction applicable to the amount awarded for future pain and suffering.

4. The judge instructed the jury:

Additionally, if you should find reasonably that there will be a diminished power to earn money in the future, then you would have to figure out reasonably what figure would this gentleman be entitled to receive to reimburse him for the loss of power to earn money in the future.

Keep in mind that if you award future earnings today, whatever amount of money you give to Mr. McDonald he would be able to put in the bank and earn interest on it. So in making an award of future damages, it is your job to determine what is the amount of money which invested today at a reasonable rate of interest would provide him in the future with the sum of money that he would probably lose in the future. So it's a reduction of present value that you work out with respect to future losses.

and/or speculative. We cannot say that the court erred as a matter of law in submitting this issue to the jury.

Federal raises numerous other claims, ranging from insubstantial to marginally meritorious, which can be disposed of with relative dispatch.

■ First, Federal contends the court improperly refused to permit its proffered expert, Edwin Kalat, to testify on the claimed design defects of the Streamer. Kalat, a chemist and private consultant in the aerosol industry, was permitted to testify on the chemical aspects of the Streamer, but was ruled unqualified to testify on its design aspects. Allegedly, Kalat's testimony on the design aspects would have rebutted Mr. Schofield's testimony as to the Streamer's binding propensity and lack of a safety lock.

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

"Whether a witness is qualified to express an opinion is a matter left to the sound discretion of the trial judge. In the absence of clear error, as a matter of law, the trial judge's decision will not be reversed." *A. Belanger & Sons, Inc. v. United States for Use and Benefit of National United States Radiator Corp.,* 275 F.2d 372, 376 (1st Cir.1960); *See also Redding v. Picard Motor Sales, Inc.,* 403 F.2d 788, 792 (1st Cir.1968). We find no such error here. Kalat's qualifications, including his education and work experience, related to the chemical contents of mace cannisters, not to their design aspects. He had no education in and expressed no familiarity with the engineering principles involved in the design of the Federal Streamer. Furthermore, the trial court properly could have regarded Kalat's proffered testimony as cumulative since Federal's other expert, Kenneth Blakely, specifically addressed and attempted to rebut Schofield's testimony on the engineer-

ing defects of the Streamer. Finally, Federal did not make known to the trial court the substance of the excluded testimony by an offer of proof and the substance was not apparent from the context within which questions were asked. Fed.R.Evid. 103(a). As such, Federal's claim of error here has been waived.

■ Federal also contends that the trial court committed plain error in permitting plaintiff's design expert to testify as to the faulty design of the leather holster in which the Streamer was carried. The holster was identified as a Smith and Wesson holster and it contained an "S & W" logo. Federal suggests that the jury verdict may have been influenced by the testimony about the design defect of the holster—i.e., the suppleness of the holster bottom.

This claim lacks merit. First, the testimony regarding the holster's suppleness was actually elicited by Federal's own counsel, apparently in an attempt to establish that the faulty design of the holster, not the Streamer, caused the accident. It has been said that the "plain error" doctrine has no application where the party claiming error invited or elicited the alleged error. 11 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2885 (1973), *citing, Aetna Cas. & Ins. Co. v. Tryniecki,* 293 F.2d 289, 291 (5th Cir.1961). In any event, the alleged error here was harmless. The holster was clearly identified during trial as being manufactured by someone other than Federal, and Federal stressed this point to the jury. Further, any possible confusion about the holster was cleared up by trial judge's liability instructions, which were limited to the design of the Streamer and did not mention the holster.

Federal next contends that the 15% comparative negligence the jury attributed to McDonald was too low as a matter of law. Federal urges that McDonald's injuries would not have been nearly so severe, and this action might not have been commenced, had he, upon his initial exposure and re-exposure to mace, washed the mace from his skin, changed his clothing, and immediately sought medical attention.

Purportedly, McDonald's knowledge and understanding of the risks of mace exposure dictated that he take such reasonable precautions to avoid possible physical injury.

 We believe the jury reasonably could have found that McDonald was not more than 15% comparatively negligent. The jury could have credited McDonald's testimony regarding his response to his initial exposure to mace. He testified that: (1) he immediately washed the exposed areas but did not go home to change his pants because he believed that the mace had not penetrated his heavy police pants; (2) he never received any warning or instruction regarding the danger of mace penetrating through his police uniform; and (3) he sought medical attention as soon as he noticed his skin problem, less than eight hours after his exposure. Concerning McDonald's re-exposure to mace, the jury could have credited his testimony that he immediately washed the exposed area. McDonald's failure to change his clothing upon re-exposure may have been the explanation for the 15% comparative negligence figure. From his testimony it is unclear why he did not immediately change his clothing upon re-exposure. However, conceding that McDonald was negligent in not immediately changing his clothes, we are unable to conclude, as a matter of law, that this negligence was responsible for greater than 15% of the injuries sustained.[5] Whether McDonald's skin problems would have reoccurred, or would have reoccurred in a substantially milder form, had he immediately changed his clothing upon re-exposure, presents a factual question of causation which was for the jury to decide. *See Jordon v. Goddard,* 14 Mass.App. 723, 442 N.E.2d 1162, 1167 (1982); *compare Uloth v. City Tank Corp.,* 376 Mass. 874, 384 N.E.2d 1188, 1193 (1978).

We find that Federal's remaining arguments are insubstantial and therefore reject them without discussion.

*Judgment affirmed.*

---

5. Massachusetts comparative negligence rule is codified in *Mass.Gen.Laws Ann.* Ch. 231, § 85:

Contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

In any such action the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict, which shall state:

(1) the amount of the damages which would have been recoverable if there had been no contributory negligence; and

(2) the degree of negligence of each party, expressed as a percentage.

Upon such findings of fact or the return of such a special verdict by the jury, the court shall reduce the amount of the damages in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made; provided, however, that if said proportion is equal to or greater than the negligence of the person against whom recovery is sought, then, in such event, the court shall enter judgment for the defendant.